Kelvin HARRELL

v.

TURNER INDUSTRIES, LTD.;
Harmony Corporation.

Civ. A. No. 94–425.

United States District Court,
M.D. Louisiana.

Oct. 23, 1995.

---

28. *See,* n. 15, *supra.*

Kelvin Harrell, Liberty, MS, pro se.

Louise Harrell, Jackson, MS, for Kelvin Harrell.

Cynthia M. Chemay, Melanie Moreland Hartmann, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, Carolyn S. Parmenter, Lemle Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, LA, for Turner Industries, Harmony Corporation.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court is "Turner Industries, Ltd. and Harmony Corporation's Motion for Partial Summary Judgment," which was taken under submission on a previous date without oral argument. Having reviewed the memoranda of the parties, the record and the applicable law, the Court DENIES the motion for partial summary judgment.

### Background

On April 29, 1994, plaintiff filed this matter claiming that he is a black male formerly employed by defendants Turner Industries, Ltd., and Harmony Corporation (hereinafter "Harmony") as an A–Class pipefitter. (R.Doc. 1.) Plaintiff further alleges that defendants violated 42 U.S.C. § 1981 by including him in a layoff on April 29, 1993, because of his race and by engaging in additional racial discrimination in selecting persons for recall from the layoff. *Id.* As to the latter allegation, plaintiff contends that defendants' hiring of new employees after the layoff violated § 1981. *Id.* Finally, plaintiff alleges that defendants' refusal to recall or rehire him constituted retaliatory discharge for plaintiff's filing a workers' compensation claim pursuant to the LSA–R.S. 23:1361. *Id.*

The uncontested facts show that Harmony provided maintenance work pursuant to a

contract at the Exxon Refinery in Baton Rouge, Louisiana. Turner Industries performs personnel services for Harmony, including recruiting, testing, drug screening and referral of persons to Harmony for jobs. Plaintiff was employed by Harmony in 1990 as a laborer assigned to Job 6299 at the Exxon Refinery and gradually was promoted to the position of pipefitter.[1] At the time plaintiff was laid off, he was an A–Class pipefitter earning $13.60 an hour.

Other than agreeing to the fact of the layoff on April 29, 1993, it is here that the parties part ways factually. Defendants claim the layoff included both black and white workers and that, since the layoff, there have been additional layoffs at the Exxon job involving both black and white workers. Further, since the layoff, Harmony has hired both black and white A–Class pipefitters. Defendants also maintain that since 1992, it has been Turner Industries' policy that job applicants be tested for knowledge and skill in the craft for which they seek employment before being referred to jobs. Turner Industries' recruiters allegedly take the applications and administer the tests.

Defendants also maintain that plaintiff has never taken the test for A–Class pipefitter or any other craft and that plaintiff only spoke to a recruiter once inquiring about A–Class pipefitter jobs at another location. At that time the recruiter allegedly told plaintiff that all the A–Class pipefitters that were needed had been hired. Defendants also contend that when a person seeks a job, the recruiter's practice is to tell the person that there are no such positions available at the time and ask the person to test for the craft in which he wants to be considered for a job.

In opposition, plaintiff contends that he was the only experienced A–Class pipefitter laid off and that white A–Class pipefitters with less experience and less seniority were not laid off. Further, plaintiff denies defendants' contention that after the layoff Harmony hired black and white pipefitters. Plaintiff also contends that, contrary to defendants' assertion that since 1992 it has

been Turner Industries' policy to test job applicants for skill in the craft for which they seek employment, plaintiff was promoted on the job and was never required to take any tests for A-class pipefitter or any other job.

Finally, as to defendants' contention that plaintiff only spoke with a Turner Industries' recruiter named Buddy Meaut once as to work, plaintiff posits that on numerous occasions he sought reemployment by phone and in person.

In the instant motion defendants seek partial summary judgment on plaintiff's claims of discrimination, not his retaliatory discharge claim. Defendants first argue that the statute of limitations has run as to plaintiff's claims related to discrimination arising from the layoff. Defendants next argue that plaintiff cannot establish a *prima facie* case under § 1981 and that, even if plaintiff can do so, he cannot carry his ultimate burden of establishing of establishing race discrimination.

In opposition, plaintiff argues that summary judgment is inappropriate because his filing of this lawsuit on April 29, 1994, was within the limitations period for filing a claim under § 1981 as to his layoff. Additionally, plaintiff temporizes that the facts show that not only can he establish a *prima facie* case of discrimination but also that he can carry his ultimate burden of proving racial discrimination.

### Law and Application

**I. Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The non-movant's burden of showing a genuine issue of material fact "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corporation,* 37 F.3d 1069, 1075 (5th

---

**1.** Plaintiff contests this fact to the extent that he claims that Turner and Harmony were his "joint employers," but this is a legal question, not a

question of fact. This legal issue is not before the Court in this motion.

Cir.1994) (*en banc* ). Further, "factual controversies [are resolved] in favor of the non-moving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.*

In essence, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### A.  Statute of Limitations

■  Defendants' initial claim is that plaintiff's lawsuit was filed in July 1994 and, as a result, the statute of limitations has run under § 1981 as to any claims arising from the layoff at issue. Because the record indicates that plaintiff's lawsuit was filed on April 29, 1994, not in July 1994, the Court finds that the lawsuit was filed within the appropriate limitations period for a § 1981 claim as established by *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). In *Goodman*, the Supreme Court held that, as to claims brought pursuant to § 1981, federal courts should select the most appropriate or analogous state statute of limitations, which is the state statute applicable to claims for personal injury. *Id.* at 660–61, 107 S.Ct. at 2620–21.

In Louisiana the prescriptive period for personal injury claims is one year. LSA–C.C. Art. 3492. Thus, when plaintiff filed his lawsuit on April 29, 1994, one year to the day after the layoff at issue, he filed suit within the applicable limitations period for § 1981 claims arising in Louisiana.

### B.  Discrimination

■  The standard for determination of whether § 1981 has been violated is similar to that used in determining whether there has been a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1 *et seq.* *Patterson v. McLean Credit Union*, 491 U.S. 164, 186–88, 109 S.Ct. 2363, 2377–79, 105 L.Ed.2d 132 (1989). "In order to prevail under § 1981, a plaintiff must prove purposeful discrimination" according to a framework set forth by the Supreme Court. *Id.* at 186, 109 S.Ct. at 2377.

Under our well-established framework, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination. The burden is not onerous. Here, petitioner need only prove that she applied for and was qualified for an available position, that she was rejected, and that after she was rejected respondent either continued to seek applicants for the position, or, as is alleged here, filled the position with a white employee.[2]

\*    \*    \*    \*    \*    \*

Once the plaintiff establishes a *prima facie* case, an inference of discrimination arises. In order to rebut this inference, the employer must present evidence that the plaintiff was rejected, or the other applicant was chosen for a legitimate nondiscriminatory reason.

\*    \*    \*    \*    \*    \*

Although [the plaintiff] retains the ultimate burden of persuasion, our, cases make clear that [he or] she must also have the opportunity to demonstrate that [the defendant's] proffered reasons for its decision were not its true reasons. In doing so, [plaintiff] is not limited to presenting evidence of a certain type. . . . The evidence which [plaintiff] can present in an attempt to establish that [defendant's] stated reasons are pretextual may take a variety of forms.

*Id.* at 186–87, 109 S.Ct. at 2378 (citations omitted). In the end, however, a plaintiff must still prove that a § 1981 violation oc-

---

**2.** The facts in *McLean* are similar to those in the present case. The plaintiff, Brenda Patterson, a black woman, was employed by McClean Credit Union in 1972 and was laid off in 1982. *Id.* at 169, 109 S.Ct. at 2369. She then filed suit under § 1981 claiming, in pertinent part, that the defendant had failed to promote her and had discharged her because of her race. *Id.* at 169, 109 S.Ct. at 2368–69.

curred. *Davis v. Chevron, U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir.1994), *citing St. Mary's Honor Center v. Hicks,* 509 U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (applying framework to alleged Title VII violation).

■ The Court first addresses the issue of whether plaintiff can prove a *prima facie* case, mindful that plaintiff "has to make a showing sufficient to establish the putative existence of every element [at issue] that is essential to [his] case." *Davis,* 14 F.3d at 1084–85. If not, "there can be no genuine issue as to any material fact, [because] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id., quoting Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In order to prove a *prima facie* case, plaintiff has to prove:

(1) that he belongs to a protected minority;

(2) that he applied for and/or was qualified for a position which was available;

(3) that his application was rejected and/or he was laid off;

(4) that after he was rejected and/or laid off, the defendants continued to seek applicants for the position or the position was filled with a white employee. *See McLean, supra.*

■ Defendants argue that plaintiff cannot prove a *prima facie* case because he cannot point to any facts to indicate that his layoff was racially motivated and because he cannot point to facts that indicate that he applied for any job for which he was qualified and was rejected. Turning to the latter issue first, defendants rely on the affidavit of Buddy Meaut to the effect that Meaut has "no record of Kelvin Harrell having made an application for any job after April 29, 1993," and similarly has no memory of plaintiff's inquiring about any job after the layoff. (Affidavit of Meaut, attached to defendants' motion for summary judgment.)[3]

In opposition, plaintiff first contends that, according to the depositions of Meaut and Russell Gauthreaux, Turner Industries' personnel director, there are numerous ways in which a person who desires to work for defendants can make their availability known to defendants. A review of these depositions confirms this contention. For example, Gauthreaux's deposition indicates that persons with current or expired Turner Industries identification cards can sign a personnel log or sign-in sheet designated for employees only. (Gauthreaux's deposition, pp. 10–11, attached to plaintiff's memorandum in opposition.) Additionally, Gauthreaux testified that persons with Turner Industries ID cards need not go through the entire application and screening process. *Id.* at 19–21. Another method of obtaining employment with defendants, according to both Gauthreaux's and Meaut's depositions, is for a person to call a hiring center and have a clerk place his or her name on a "call-in" sheet. (Gauthreaux's deposition, pp. 24–25; Meaut deposition, p. 10, attached to plaintiff's memorandum in opposition.)

Gauthreaux also testified that persons who know a recruiter can contact the recruiter directly and that supervisors at a particular jobsite may request a person by name from a recruiter, although supervisors can not make job offers. (Gauthreaux's deposition, pp. 24–25.) Additionally, recruiters can call previous employees to check on their availability for work. (Meaut's deposition, p. 9.)

Further, Gauthreaux testified that previous employees are given priority in hiring and that, although everyone rehired is drug-tested, those persons with a Turner ID card—even if more than a year old—do not have to retest for the craft if they are going back into the same craft. (Gauthreaux's deposition, pp. 19, 22.)

Plaintiff testified in his deposition that he called the clerical staff at the hiring center to renew his application and keep it current and that he was told by defendants that his name would be kept on file. (Plaintiff's deposition,

---

**3.** Although the affidavit is by "Buddy Meaut," a review of the deposition of Justin J. Meaut attached to plaintiff's opposition memorandum in- dicates that Buddy Meaut and Justin J. Meaut are the same person.

pp. 118–19, attached to his memorandum in opposition.) One of these calls occurred in November 1993. *Id.* at 119. Additionally, plaintiff visited the hiring center to see about getting hired for a job at a location different from the Exxon Refinery. *Id.* at 154–55. Finally, although during his deposition plaintiff could not remember the full name of the person he spoke with when he visited the hiring center, he testified that: "I think it was Buddy." *Id.* at 122.

Based upon the foregoing deposition testimony of Meaut, Gauthreaux and plaintiff, and construing the inferences from this testimony in the light most favorable to plaintiff, the Court finds that there is a genuine issue of material fact as to whether plaintiff applied for a job with defendants following his layoff in one of the manners traditionally used by defendants to hire employees and whether he was qualified. The fact that Meaut states in his affidavit that he does not recall plaintiff's contacting him does not aid defendants' quest for summary judgment in view of plaintiff's deposition testimony to the contrary that he spoke with a man named "Buddy" at the hiring center. Similarly, Meaut's statement that his practice is to tell persons that there are no jobs and to ask the person to test for the craft if he (or she) wants to be considered for future jobs is undermined by the undisputed fact that plaintiff had been promoted to and had been working as an A–Class pipefitter at the time he was laid off and by Gauthreaux's testimony that persons rehired do not have to test for the craft to which they return.

The only other question as to whether plaintiff can establish a *prima facie* case is whether plaintiff can show that his layoff or defendants' failure to rehire him was motivated by racial animus. Defendants argue this point in a general fashion, with the only contention of any specificity being that both blacks and whites were laid off in 1993. In opposition, plaintiff points to his own deposition testimony for genuine issues of material fact. He testified that A–Class white pipefitters, including some with less seniority and experience than plaintiff, were never laid off or were subsequently rehired. (Harrell's deposition, pp. 70, 72, 79–80, 160–61.) Plaintiff

also notes the deposition testimony of Harmony's manager at the Exxon refinery that the factors of "longevity," attendance and work performance play a role in determining whether to lay off an employee. (Donnie Wellman's deposition, pp. 13–14, attached to plaintiff's memorandum in opposition.)

Additionally, plaintiff also relies on defendants' discovery responses, which state that during the period November 1993 through January 1994, defendants hired 54 white A–Class pipefitters and only six black A–Class pipefitters, with the black pipefitters having been hired at the tail-end of the hiring period of all the pipefitters in early 1994. (Defendants' Responses to Plaintiff's Second Document Requests to Defendants, Responses No. 1 and No. 3, attached to plaintiff's memorandum in opposition.)

The Court finds that plaintiff's and Wellman's deposition testimony coupled with defendants' discovery responses create a genuine issue of material fact as to whether plaintiff can prove that his non-hiring was a result of racial animus. There are factual questions whether plaintiff was laid off because of his race, whether defendants continued to seek applicants for the pipefitter job in the face of plaintiff's availability and/or whether defendants hired white pipefitters instead of plaintiff. *McLean, supra.* These factual issues prevent summary judgment as to whether plaintiff can prove a *prima facie* case under § 1981, especially when the burden of proving of a *prima facie* case is not an onerous one. *McLean, supra.*

The final issue raised by defendants is whether plaintiff can carry his ultimate burden of establishing race discrimination. In support of their argument that plaintiff cannot do so, defendants again assert only in a general manner that the undisputed facts show that there was a legitimate, nondiscriminatory basis for plaintiff's layoff and for the fact that he was not rehired. Further, defendants maintain that plaintiff can show no facts that the reduction in force or Turner's policy as to applications and a craft test were a pretext for race discrimination.

However, as set forth above, plaintiff testified in his deposition that white A–Class pipefitters—some with less experience than

plaintiff—were never laid off or rehired. Further, defendants' discovery responses clearly indicate that in November and December 1993 only white A–Class pipefitters were rehired, followed by a hiring of white and black A–Class pipefitters in early January 1994. During this period defendants only hired six black pipefitters as opposed to 54 white pipefitters. The facts also show that, before plaintiff was laid off, he was employed as an A–Class pipefitter despite the fact that he had not been required to take a test earlier as to this craft and, further, that a person rehired with a Turner ID card does not necessarily have to re-test for their craft. As noted, this directly contradicts defendants' argument as to their requirement of a craft test for prospective employees as of 1992, at least insofar as summary judgment is concerned.

## II. Conclusion

In view of the foregoing deposition testimony, defendants' discovery responses and the undisputed fact that plaintiff was working as an A–Class pipefitter prior to the layoff, and construing the inferences from these facts in favor of plaintiff, the Court finds there is a genuine issue of material fact as to whether defendants' contentions are pretextual and whether plaintiff can ultimately prevail on his burden of showing racial discrimination. The Court concedes that, even with these evidentiary conflicts, this evidence might not necessarily be sufficient for plaintiff to carry the day at trial. However, this Court must also recognize that by law plaintiff is accorded innumerable different ways of establishing purposeful discrimination and pretext by his employers, which opportunity may not be denied. *See McLean,* 491 U.S. at 188, 109 S.Ct. at 2378–79.

Accordingly,

IT IS ORDERED that defendants' motion for summary judgment is DENIED.