## Michael J. RILEY

### v.

### TRANSAMERICA INSURANCE GROUP PREMIER INSURANCE COMPANY and Valco–USA, Inc.

Civ. A. Nos. 95–2267, 95–2278.

United States District Court, E.D. Louisiana.

April 8, 1996.

---

Curklin Atkins, Curklin Atkins, PLC, New Orleans, LA, Michael J. Riley, New Orleans, LA, for plaintiff.

Robert E. Barkley, Jr., Thomas E. Schwab, Barkley & Thompson, New Orleans, LA, for defendants.

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

VANCE, District Judge.

This matter is before the Court on the cross-motions for summary judgment brought by plaintiff, Michael J. Riley ("Riley") and defendants, Transamerica Insurance Group Premier Insurance Company ("TIG") and Valco–USA Inc. ("Valco"). For the reasons stated below, the Court DENIES plaintiff's motion and GRANTS defendants' motion.

### I. BACKGROUND

On May 8–9, 1995, high winds apparently damaged the roof of a residence at 7137 West Tamaron Boulevard in New Orleans, Louisiana, allowing water to enter the home. The plaintiff, Michael Riley, reported the loss to TIG, who retained Valco, a local adjusting firm, to investigate the matter. Although Riley resided in the home, he was neither the owner nor the mortgagor of the property. Instead, Riley held a bond for deed contract with the owners, William and Sheila Stallworth (collectively the "Stallworths"). (Plaintiff's Opposition Brief, Ex. 1, Contract for Sale Agreement.)

Oak Tree Mortgage Corp. ("Oak Tree"), the mortgagee at the time of the alleged damage, had obtained a Lenders Security Program Master Policy (the "Master Policy"), No. TFS 7092 0000, from TIG. The policy was issued on July 1, 1993 and was intended to provide coverage if the mortgagor failed to provide Oak Tree with the requisite proof of his own property insurance. (Defendant's Motion to Dismiss, Ex. 1, Aff. of Robert G. Forbes, Assistant Vice President of Insureco, Inc., a managing general agency of TIG, at ¶ 2.) To obtain coverage, Oak Tree would typically advise TIG that a mortgagor had not provided proof of coverage, and TIG would then issue a Certificate of Coverage with a Declarations page naming that mortgagor as an insured under the Master Policy. TIG did not independently verify whether the requested insured was the owner or mortgagor of the property. (*Id.* at ¶ 3.)

On May 8–9, 1995, Michael J. Riley, Sr. was not listed as an insured under any TIG policy. However, on May 15, 1995, Oak Tree instructed TIG to issue a Certificate of Coverage retroactive to April 21, 1995, naming Michael J. Riley, Sr. as an insured, for the property located at 7137 West Tamaron Boulevard. (*Id.* at ¶ 4.) TIG did not verify Riley's status with respect to the property. Two weeks later, on June 1, 1995, Oak Tree advised TIG that it had erroneously instructed TIG to name Riley as an insured, that the Stallworths were the mortgagors of the property, and that TIG should reissue the Declarations page, effective April 21, 1995, to name the Stallworths and delete Riley. (*Id.* at ¶ 6.) A new Declarations page listing the Stallworths as the named insureds was issued on June 27, 1995. In the meantime, on

May 26, 1995 the Stallworths filed a cancellation of the bond for deed contract with Riley dated May 19, 1995, asserting that he failed to make payments thereunder since February 1995. (Defendants' Motion to Dismiss, Ex. 3.) In December of 1995, the Civil District Court for the Parish of Orleans confirmed the cancellation and made absolute a rule to evict Riley. (Defendants' Opposition to Plaintiff's Motion for Partial Summ.J., Ex. 1, Judgment.)

According to the Master Policy, TIG was to indemnify the "Insured" and under certain circumstances, the "Borrower" or mortgagor under the terms set out in the policy. (Defendants' Motion to Dismiss, Ex. A, Master Policy.) The "Insured" under the Master Policy is defined as the "Named Insured." In the Master Policy Declarations of the Master Policy, Oak Tree, the mortgagee, is listed as the "Named Insured." This designation is consistent with the "Coverage" section of the policy, which states that the policy applies to damage or loss to real property "in which the Insured has an interest as mortgagee." (*Id.* at 1.) The "Borrower" is defined as the "mortgagor" of the property. (*Id.*) It is undisputed that the mortgagors are the Stallworths. The Master Policy goes on to state that losses are payable to the "Insured and/or the Borrower as their interests may appear." (*Id.* at 2.) There is nothing in the Master Policy that indicates that someone other than the "Insured" or the "Borrower" may collect for losses.

In the section outlining the losses to which the policy applies, the Master Policy directs the parties to attached Form DP-3 (the "Form"). The Form, which is actually a mandatory endorsement, details the extent of coverage under the Master Policy. It refers to the "named insured" shown in the Declarations as the one who receives payment for the loss. As explained above, TIG initially listed the plaintiff as a "named insured" on a Declarations form, but TIG took Riley off the Declarations form shortly after finding out that the Stallworths were the actual mortgagors. (*See* Forbes Aff.) The Declaration form specifically stated that it was issued under the terms of the Master Policy. The Master Policy makes clear that only borrower-mortgagors and lender-mortgagees are covered by the policy. Plaintiff does not claim to be either.

TIG made three payments under the policy; two were made during the period Riley was listed as an "insured" on the Declarations form, and one was made after he filed this lawsuit. On June 2, 1995, TIG provided a $10,000 advance on their loss settlement to Riley and Suncoast Mortgage Co., the new mortgagee. On June 7, 1995, TIG paid Riley $5,785 for "additional living expenses" pursuant to Coverage E under the policy. On July 20, 1995, after Riley had commenced the lawsuit, TIG made a final payment of $11,460.13 to Suncoast, the Stallworths, and Riley, as joint payees. Despite the fact that neither the mortgagees, Oak Tree or Suncoast, nor the mortgagors, the Stallworths, challenged the amount of the settlement, Riley filed suit against TIG and Valco for $60,000 in alleged damages and losses sustained to the property at 7137 West Tamaron Boulevard during the storm of May 8–9, 1995.

Plaintiff's complaint raises the following claims against both defendants: (1) breach of contract; (2) tort liability under La.Civ.Code 2315; (3) Fair Housing Act liability under 42 U.S.C. § 3601, *et seq.;*[1] (4) liability under 42 U.S.C. §§ 1981 and 1983, (5) liability for failure to pay a claim timely under La.Rev. Stat. 22:658; (6) bad faith claims under La. Rev.Stat. 22:1214 and 22:1220;[2] (7) breach of fiduciary duty; and (8) punitive damages.[3]

Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12. However, in light of the extrinsic evidence attached to the motion, defendants' motion should be considered as one for summary judgment. It is apparent from the affidavits and other supporting materials attached to plaintiff's opposition

---

1. Plaintiff's redlining allegation is addressed under his Fair Housing Act claim.

2. Plaintiff's bad faith claim for failure to tender money has been subsumed under his statutory insurance bad faith claims.

3. Plaintiff also had class action claims based on racial discrimination. However, plaintiff voluntarily dismissed those claims without prejudice on October 26, 1995.

briefs that plaintiff has had adequate notice of the nature of defendants' motion. Therefore, the Court may consider defendants' motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. In addition, plaintiff has filed his own motion for partial summary judgment on his claims under La.Rev.Stat. 22:658 and 1220. The Court resolves the merits of the parties' respective motions as follows.

## II. DISCUSSION

Under Fed.R.Civ.P. 56, summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). All inferences will be made in favor of the party opposing summary judgment. However, the opposing party may not rely on mere allegations or denials but must set forth specific facts establishing that genuine issues exist for trial. *See* Fed.R.Civ.P. 56(e). Only factual disputes "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### A. *Defendants' Motion for Summary Judgment*

Defendants' principal argument is that Riley is not an insured under the Master Policy and is therefore precluded from bringing any claims based on the policy. To determine if Riley is an insured under the policy, the Court must examine the insurance policy itself.

■ Certain legal principles govern the interpretation of insurance policies. First, an insurance policy is a contract, and it constitutes the law between the parties. *Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 420 (La.1988). If the policy wording is clear, and it expresses the intent of the parties, the agreement must be enforced as written. *Id.* The policy must be construed as a whole, and one portion should not be construed separately at the expense of disregarding another. *Id.* If an ambiguity exists, the ambiguity must be construed in favor of the party seeking coverage. *Id.* However, the Court may not alter the terms of the policy under the guise of contract interpretation when the language of the policy is unambiguous. *Id.*

The Court finds that the Master Policy is unambiguous. As the Court noted earlier in this opinion, the Master Policy makes clear that only the "Named Insured" or mortgagee, and the "Borrower" or mortgagor, have rights to payment of losses under the policy.

■ The Court rejects plaintiff's argument that being named as the insured on the Declarations form entitles him to bring claims under the policy. Riley contends that the error in placing his name on the Declarations as an insured creates an ambiguity in the policy that entitles him to coverage. That TIG made such a mistake did not create an ambiguity in the Master Policy, which makes clear that only the mortgagor or the mortgagee could be insureds under the policy. Plaintiff also contends that the Declaration page did not inform him that it was subject to the Master Policy. The Declaration itself states that it is "issued under the provisions" of Master Policy No. 7092. (Plaintiff's Opposition Brief, Ex. B., Declarations.) Therefore, plaintiff was on notice that the Master Policy affected the coverage available under the policy.

Furthermore, Riley was not named as an insured at the time of the loss; rather, he was erroneously placed on the Declarations after the loss had occurred. Plaintiff may not bootstrap the insurer's post-loss error, which was corrected, into a claim under the policy. He could not even have had an expectation of coverage when the loss occurred.

■ Plaintiff claims that he paid for insurance under his bond for deed contract and asserts that even as a bond for deed holder, and not a mortgagor, he is entitled to be an insured under the Master Policy. A "bond for deed" is defined as:

A bond for deed is a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and *in which the seller after*

*payment of a stipulated sum agrees to deliver title to the buyer.*

La.R.S. 9:2941 (emphasis added). Louisiana law requires that to make any real property that is mortgaged subject to a bond for deed, it is necessary to obtain a written guaranty from the mortgage holder to release the property upon payment by the buyer of a stipulated mortgage release price, with which agreement the secured notes shall be identified. Plaintiff waived this provision in his bond for deed contract.

To support his argument, Riley cites *Brough v. Presidential Fire & Marine Ins. Co.*, 189 La. 880, 181 So. 432 (1938). *Brough,* however, is inapplicable. In *Brough,* the Broughs purchased *land* under a bond for deed contract and built a frame house on the land. They purchased insurance on the house and the contents. When a fire destroyed the property, the insurer sought to avoid payment on the basis of a clause that voided the policy if the interest of the insured is other than unconditional and sole ownership. The Louisiana Supreme Court held that "the fact alone that plaintiffs did not have a fee-simple title to the *ground* upon which the insured building was erected does not of itself void the policy." *Id.* at 886, 181 So. 432 (emphasis added). The Court explained that the building had been erected by plaintiffs and occupied by them for nine years; the ground was subject to bond for deed contract upon which they had paid $700 and owed $200–300 more. The plaintiffs had kept the building insured from the time it was built. Riley's case is distinguishable in that he was listed by mistake as an insured for six weeks, whereas the plaintiffs in *Brough* had maintained insurance in their own names for nine years. Further, unlike the Brough plaintiffs, Riley did not own the structure claimed to be insured. Moreover, Riley had failed to pay on his bond for deed contract, which included insurance payments, since February 1995. Riley's bond for deed contract therefore did not create an insurable interest in the property.

The Court also finds that, even if Riley were an insured, he would have no claim under the policy because his insurable interest would be secondary to the mortgagee's. The Master Policy states that the mortgagor would be entitled only to "residual amounts of insurance over and above the insurable interest" of the mortgagee. (*See* Defendants' Ex. A, Master Policy at 1.) A mortgagee's insurable interest is the outstanding amount due under the mortgage on the property, in this case approximately $105,000. (Defendant's Ex. 1, Forbes Aff. at ¶ 18.) At most, Riley's damages amounted to $60,000. Therefore, under the policy, Riley's interest, if he had one, would not even have been implicated. *See American General Fire & Casualty Co. v. Reese*, 853 F.2d 370, 373 (5th Cir.1988) (in a policy intended for the benefit of the mortgagee, proceeds of any insurance proceeds go first to the mortgagee, the excess, if any, is paid to the mortgagor); *Toups Marine Transport, Inc. v. Zurich Ins. Co.*, 636 F.Supp. 847, 848 (E.D.La.1986) (same); *Durbin v. Allstate Ins. Co.*, 267 So.2d 779, 781 (La.App. 2d Cir.1972). For this reason also, Riley does not have a claim to proceeds under the policy.

### 1. *Riley's Policy Related Claims*

Based on Riley's status as a non-party to the Master Policy, the Court grants defendants' motion for summary judgment as to plaintiff's claims for (1) breach of contract; (2) breach of fiduciary duty by disclosing confidential information to third parties; and (3) statutory insurance bad faith claims under La.R.S. 22:658, 1214, and 1220.

#### a. *Breach of Contract Claim*

Under Louisiana law, a contract is formed when the following elements are present: (1) capacity; (2) consent; (3) lawful cause; and (4) valid contractual object. *Ingraffia v. NME Hospitals*, 943 F.2d 561, 565 (5th Cir.1991). The Court finds that plaintiff, as a matter of law, cannot show the existence of valid contract between defendants and himself. As a non-party to the insurance contract, Riley has no contractual rights that could be breached by defendants. Therefore, the Court dismisses Riley's breach of contract claim.

#### b. *Breach of Fiduciary Duty Claim*

For the same reasons, the Court must dismiss Riley's breach of fiduciary duty

claim. For Riley's claim to survive, he must show the existence of a fiduciary relationship with the defendants. This he has been unable to do. Without a fiduciary relationship with the defendants, Riley has no rights that could be breached.

### c. Claim under La.R.S. 22:658, 1214, and 1220

■ Riley alleges that defendants have, in bad faith, failed to tender proper payment to him in a timely manner in violation of La.R.S. 22:658, 1214, and 1220. To succeed on his 22:658 and 1220 claims, Riley must first show that he has a "valid, underlying, substantive claim upon which insurance coverage is based." *Clausen v. Fidelity and Deposit Co. of Md.*, 660 So.2d 83, 85 (La.App. 1st Cir.1995), *writ denied*, 666 So.2d 320 (La.1996). As the Court has already discussed, Riley has no valid, underlying claim for insurance coverage. Although the Court recognizes that one need not be an insured to collect damages under 22:1220, one must at least be a third party claimant to the insurance coverage. *See Rusch v. Cook*, 619 So.2d 122, 124 (La.App. 1st Cir.1993), *writ denied*, 625 So.2d 1043 (La.1993) (insurer also owes duty to third party claimants). However, Riley is neither an insured nor a third party claimant: he has no first party rights under the policy and he is not bringing a third party claim against the insurer and/or insured. Therefore, Riley's 22:658 and 1220 claims must be dismissed.

■ Moreover, Riley's claim against Valco must be dismissed because Valco is not an insurer. The language in both 22:658 and 1220 makes clear that it imposes a duty on insurers. As an adjuster hired by TIG, Valco has no duties under 22:658 and 1220.

■ Riley also brings a claim under 22:1214. However, that statute does not provide for a private cause of action. *Clausen*, 660 So.2d at 86. Therefore, Riley's 22:1214 claim must also be dismissed.

### 2. Federal Civil Rights Claims

Riley has also alleged claims under the Fair Housing Act and 42 U.S.C. §§ 1981 and 1983. The Court finds that these claims cannot survive defendants' summary judgment motion.

### a. Fair Housing Act Claim

Riley alleges that defendants violated the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, by engaging in a form of redlining in its adjustment and payment of claims related to the property at 7137 West Tamaron Boulevard.

■ Redlining refers to a practice in the insurance business in which insurers either decline to write insurance or charge higher rates for people who live in particular areas, especially those with large or growing minority populations. *NAACP v. American Family Mutual Insurance Co.*, 978 F.2d 287, 290 (7th Cir.1992), *cert. denied*, 508 U.S. 907, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993).

■ The Court recognizes that at least two circuits have held that discriminatory redlining may be actionable under the Fair Housing Act. *See Nationwide Mutual Insurance Co. v. Cisneros*, 52 F.3d 1351, 1359–60 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 973, 133 L.Ed.2d 893 (1996); *American Family*, 978 F.2d at 299–301, *cert. denied*, 508 U.S. 907, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993). *But c.f., Mackey v. Nationwide Ins. Co.*, 724 F.2d 419, 423 (5th Cir.1984) (redlining does not violate the Fair Housing Act). However, the policy rationale supporting the linkage to the Fair Housing Act was that obtaining property insurance is directly connected to the ability to purchase a home, the activity expressly protected under the Act. *Nationwide*, 52 F.3d at 1359; *American Family*, 978 F.2d at 300. Here, Riley does not complain that he is unable to obtain coverage in connection with a home purchase. Instead, he merely states that defendants did not adequately or timely address his damage claims. This type of claim is not actionable under the Fair Housing Act. Therefore, plaintiff's claim must be dismissed.

### b. Claim Under 42 U.S.C. § 1983

■ Riley also alleges that defendants' delay in paying on his claim and the inadequacy of the adjustment violate 42 U.S.C. § 1983. Section 1983 prohibits discrimina-

tion under color of state law. Specifically, it states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States.... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws....

As defendants point out, there is no allegation here that defendants were acting under color of state law. Therefore, plaintiff has no claim against defendants for a violation under § 1983.

### c. Claim Under 42 U.S.C. § 1981

██ Plaintiff also alleges a claim under 42 U.S.C. § 1981. Under 42 U.S.C. § 1981, plaintiff must allege facts in support of the following elements:

> (1) the plaintiff is a member of a racial minority;
>
> (2) the defendant's intent to discriminate on the basis of race;
>
> (3) discrimination concerning one or more of the activities enumerated in the statute.

*Green v. State Bar of Texas,* 27 F.3d 1083 (5th Cir.1994). Section 1981 was intended to prevent private interference with an individual's right to engage in economically significant activity free from racial discrimination. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 661–62, 107 S.Ct. 2617, 2621–22, 96 L.Ed.2d 572 (1987).

██ Plaintiff must show purposeful discrimination to prevail on a claim under § 1981. Under the well-established framework set out by the Supreme Court, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186–88, 109 S.Ct. 2363, 2377–79, 105 L.Ed.2d 132 (1989); *Harrell v. Turner Industries, Ltd.,* 901 F.Supp. 1149, 1152 (M.D.La.1995). The plaintiff has offered only conclusory allegations in his pleadings to support his claim that defendants acted in a racially discriminatory manner when they allegedly delayed payment on his claim and failed to adjust the loss properly. The facts shown here demonstrate that plaintiff was not entitled to coverage under the insurance policy in issue. The Court must therefore dismiss his § 1981 claim based on alleged discrimination in dealing with plaintiff's claims under that policy. *See* Fed.R.Civ.P. 56(e).

### 3. Claim Under La.Civ.Code 2315

Plaintiff has failed to reveal the source of defendants' tort liability under La.Civ.Code 2315. However, it appears to stem from the allegations that support plaintiff's other claims. In light of the Court's dismissal of those claims, there is no duty of due care owed by defendants to plaintiff. Therefore, the Court must also dismiss plaintiff's 2315 claim.

### B. Plaintiff's Motion for Summary Judgment

As plaintiff's claims under La.R.S. 22:658 and 1220 have been dismissed pursuant to defendants' motion for summary judgment, the Court need not consider plaintiff's motion. Accordingly,

**IT IS ORDERED** that the summary judgment motion of defendants is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the summary judgment motion of plaintiff Michael J. Riley is hereby **DENIED.**

**IT IS FURTHER ORDERED** that the parties prepare a judgment in accordance with the Court's Order and submit it to the Court within ten days of entry of this Order.