Michael **BURRELL** and Cherie Burrell, individually and jointly (The Burrell Family), Plaintiffs,

v.

**STATE FARM AND CASUALTY CO.,** State Farm General Insurance Co., Dean Fitrakis, officially and individually, M. Visgauss, officially and individually, M. Visgovich, officially and individually, David Vales, officially and individually, Fleet Real Estate Funding Corp., its successors or assigns ATIMA, Defendants.

No. 00 CIV. 5733(JGK).

United States District Court,
S.D. New York.

Sept. 3, 2002.

Michael Burrell, New York City, Pro se.

Cherie Burrell, New York City, Pro se.

### OPINION AND ORDER

KOELTL, District Judge.

This action arises out of the plaintiffs' disputes with their mortgage lender, Fleet Real Estate Funding Corp. and its parent company Fleet Real Estate Funding Corp. (collectively, "Fleet"), and the plaintiffs' insurer, State Farm Fire and Casualty Co. and its parent company State Farm General Insurance Co. (collectively, "State Farm"), after a fire damaged their home and the plaintiffs attempted to obtain insurance proceeds for the losses allegedly sustained. The plaintiffs, Michael and Cherie Burrell, proceeding *pro se*, claim that the defendants committed intentional fraud and a number of related tortious or otherwise wrongful acts, and discriminated against them in various ways after the fire.

The plaintiffs bring their claims of discrimination under federal and state statutes including Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), 42 U.S.C. § 3601, *et seq.;* the Civil Rights Acts, 42 U.S.C. §§ 1981, 1982, 1983 and 1986; the New York City Human Rights Law, New York City Administrative Code § 8–101 *et seq.;* and the New York State Human Rights Law, N.Y. Executive Law § 296 *et seq.* The plaintiffs also bring a number of state law claims against the defendants, variously, for tortious interference with contract, negligence, trespass, unjust enrichment, fraud

and/or constructive fraud, intentional fraud in violation of Sections 349 and 350 of the New York General Business Law, and breach of the implied duty of good faith and fair dealing. Finally, the plaintiffs bring claims against State Farm for allegedly engaging in a pattern of racketeering activities in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as well as claims against both Fleet and State Farm for conspiring to commit a number of the underlying wrongful acts alleged in the Second Amended Complaint.

By Opinion and Order dated July 7, 2001, the Court granted in part and denied in part the defendants' motions to dismiss a number of related claims asserted in the plaintiffs' First Amended Complaint. *See Burrell v. State Farm Fire & Cas. Co.*, No. 00 Civ. 5733, 2001 WL 797461 (S.D.N.Y. July 12, 2001) (*"Burrell I "*). The Court denied the plaintiffs' motion for a preliminary injunction suspending their obligation to make mortgage payments to Fleet. The Court dismissed a number of the plaintiffs' original claims without prejudice, a number of the plaintiffs' claims survived, and the plaintiffs filed a Second Amended Complaint on August 23, 2001.

There are currently several motions pending before the Court. The plaintiffs move for the entry of partial judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure on the claims that were dismissed with prejudice in the Court's Opinion and Order dated July 7, 2002 in order to file an immediate appeal. The plaintiffs also move pursuant to Rule 52(c) for judgment on the pleadings as a matter of law on a number of the claims raised in the Second Amended Complaint. The defendants State Farm and Fleet move pursuant to Rule 12(b)(6) to dismiss a number of claims raised in the Second Amended Complaint.

## I.

The first issue is whether to grant the plaintiffs' motion pursuant to Rule 54(b) for the entry of partial judgment on the claims that were dismissed with prejudice on July 7, 2001 in order to allow for an immediate appeal of the Order dismissing those claims, despite the fact that no final judgment disposing of all claims has been entered. Piecemeal appeals of this kind are generally disfavored. *See Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435–38, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). Rule 54(b) does, however, permit a district court to enter separate final judgment on any claim or counterclaim after making "an express determination that there is no just reason for delay." Fed.R.Civ.P. 54(b); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 110 (2d Cir.2000). This power is largely discretionary, *see Curtiss–Wright Corp.*, 446 U.S. at 10, 100 S.Ct. 1460, but is to be exercised in light of "judicial administrative interests as well as the equities involved," and giving due weight to "the historic federal policy against piecemeal appeals." *Id.* at 8, 100 S.Ct. 1460 (internal quotation marks omitted).

Rule 54(b) motions should not be granted routinely; they should be granted "only in the infrequent harsh case," where there exists "some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Citizens Accord, Inc. v. The Town of Rochester*, 235 F.3d 126, 128 (2d Cir.2000) (per curiam) (internal citations and quotation marks omitted). Certification should not be granted solely at the request of the parties, and must instead be justified by a reasoned explanation for a departure from the normal practice of consolidating all claims and parties for review in a single

appellate proceeding. *See Cullen v. Margiotta,* 618 F.2d 226, 228 (2d Cir.1980).

In this case, there is no basis for an entry of partial judgment. The plaintiffs' arguments for entry of partial judgment are limited to contentions that the Court erred in some of its rulings and that these allegedly erroneous rulings may have consequences with regard to some of the claims raised in the Second Amended Complaint. However, the claims that have been dismissed with prejudice arise out of the same facts and circumstances as those raised in the Second Amended Complaint and are sufficiently intertwined with these new claims that an immediate appeal is not justified. As the Supreme Court has stated, the district court's "proper guiding star" in determining whether to grant a Rule 54(b) motion is "the interest of sound judicial administration." *Curtiss–Wright,* 446 U.S. at 8, 100 S.Ct. 1460; *Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1095 (2d Cir.1992). Where, as here, the claims that were dismissed arise out of the same facts and circumstances as the remaining claims, and are so closely intertwined, it will rarely advance judicial economy to allow for piecemeal appeals, which can require two (or more) three-judge panels to familiarize themselves with the operational facts and factual background to this case. *See Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627, 631 (2d Cir.1991) ("It does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case, instead of having the trial judge, who sits alone and is intimately familiar with the whole case, revisit a portion of the case. . . .").

■ The plaintiffs have also raised a number of new claims in the Second Amended Complaint that may, if meritorious, render the dismissal of the claims in the First Amended Complaint moot, and a decision on the merits of the plaintiffs' remaining claims will provide the Court of Appeals with a more detailed record against which to evaluate any appeal by the plaintiffs. Where the resolution of the remaining claims could conceivably affect an appellate court's decision of the claims on appeal, a district court should be reluctant to grant a Rule 54(b) motion. *Cf. Hogan v. Consolidated Rail Corp.,* 961 F.2d 1021, 1025 (2d Cir.1992) (discussing the dismissal of claims against fewer than all defendants); *In re Blech Secs. Litig.,* No. 94 Civ. 7696, 1997 WL 20833, at *2 (S.D.N.Y. Jan. 21, 1997) (same).

For all of these reasons, the plaintiff's motion for entry of partial judgment is denied.

## II.

■ The plaintiffs also purport to move pursuant to Rule 52(c) for judgment as a matter of law on their various claims against State Farm. However, Rule 52(c) allows for the entry of judgment as a matter of law only during non-jury trials, and not in the present circumstances, where the parties seek a jury trial on their claims. *See* Fed.R.Civ.P. 52(c). The appropriate mechanism for an entry of judgment as a matter of law in favor of the plaintiffs before trial is a motion for summary judgment pursuant to Rule 56. However, the plaintiffs have not met the prerequisites for filing a motion for summary judgment, including the provision of a statement of purportedly undisputed facts. The parties also have not yet conducted discovery, and, as discussed more fully below, there are plainly disputed facts in this case that would preclude the entry of summary judgment at this time. Whether construed as a motion for judgment as a matter of law pursuant to Rule 52(c) or for summary judgment pursuant

to Rule 56, the plaintiffs' motion for judgment as a matter of law is therefore denied.

### III.

The remaining motions are motions to dismiss on the part of the defendants. On a motion to dismiss, the allegations in the Second Amended Complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiffs' favor. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the defendants' present motions to dismiss should only be granted if it appears that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Grandon*, 147 F.3d at 188; *Goldman*, 754 F.2d at 1065.

 In deciding the motion, the Court may consider documents that are referenced in the Second Amended Complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002); *see also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759,

762 (2d Cir.1991); *Skeete v. IVF, Inc.*, 972 F.Supp. 206, 208 (S.D.N.Y.1997); *VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F.Supp.2d 435, 437 (S.D.N.Y.2001). Where, as here, the plaintiffs are proceeding pro se, the Court is required to "read [the plaintiffs'] pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (internal citation and quotations omitted).

The Second Amended Complaint repeats a number of factual allegations from the First Amended Complaint, which the Court has already set forth in the prior Opinion and Order in *Burrell I*, familiarity with which is assumed. The Second Amended Complaint ("Compl.") also contains a number of new factual allegations that are relevant to the present motions to dismiss. The following facts are set forth in the Second Amended Complaint and are accepted as true for the purposes of the defendants' motions to dismiss.

The plaintiffs are residents of the City and State of New York and have two children. (Compl.¶ 1.) The defendant Fleet is a corporation incorporated in South Carolina. (Compl.¶ 6.) The defendant State Farm is a corporation incorporated in Illinois that is authorized to issue insurance policies in New York. (Compl.¶¶ 2–3.) The defendants Dean Fitrakis ("Fitrakis"), M. Visgauss ("Visgauss"), M. Visgovich ("Visgovich"), and David Vales ("Vales") are all employees of State Farm (collectively with State Farm the "State Farm Defendants"). (Compl.¶ 4.)

On January 25, 1993, Fleet and the plaintiffs entered into a mortgage agreement (the "Mortgage Agreement") in which the plaintiffs provided Fleet a mortgage on their residence at 134–21 232nd Street, Queens, New York, 11413 (the "Residence") as security for a loan. *See*

*Burrell I*, 2001 WL 797461, at *1. The plaintiffs and Fleet are both named as insureds under insurance policy 56–0807118–4 (the "Policy") issued by State Farm, as is allegedly required by the terms of the Mortgage Agreement. (Compl.¶¶ 16–17.) The Policy insures against all risks of loss to the Residence and the plaintiffs' personal property in the Residence deriving from certain enumerated perils and losses, including losses from fire, flooding and weather-related damages. (Compl. ¶ 16.)

On November 1, 1998, the Residence and its contents were damaged by what the New York City Fire Department determined to be an electrical fire. (Compl.¶¶ 20–21.) Both State Farm and Fleet were timely informed of the loss. The plaintiffs claim they suffered $212,187.00 in damages to the Residence and $269,547.15 in damages to their personal property. (Compl.¶ 22.) The plaintiffs submitted a claim of loss to State Farm. (Compl.¶ 123.)

State Farm and Fitrakis subsequently made a number of attempts to investigate the origin of the fire and the amount of loss. The plaintiffs claim that they attempted to allow for such an investigation, but the parties were unable to come to terms on an appropriate time and method for completing the investigations. (Compl.¶¶ 28–35, 37–38, 43–58, 61–65.) On November 13, 1998, State Farm and Vales cancelled the plaintiffs Policy and gave the plaintiffs notice of the cancellation by letter, explaining that the Policy had been cancelled because the plaintiffs "failed to cooperate with the fire investigation and with providing dates for other investigations of the damage and losses" and had "impeded the cause of origin investigation," such that "the cause of origin was undetermined." (Compl.¶ 65.) The Policy was subsequently reinstated and cancelled

on a number of occasions. (Compl ¶¶ 70–75.)

On February 12, 1999, State Farm issued the plaintiffs a letter declining their claim of loss resulting from the fire, allegedly because the plaintiffs had failed to provide appropriate statements under oath to corroborate their claims. (Compl. ¶¶ 123–24.) On April 12, 1999, State Farm provided Fleet with notice of the declination of the plaintiffs' claim of loss. (Compl.¶ 180.)

On August 2, 2000, the plaintiffs brought this action against the State Farm defendants and Fleet. State Farm subsequently provided the plaintiffs with an offer of settlement, which the plaintiffs declined, and which Fleet subsequently accepted as a co-insured under the Policy. (Compl. ¶¶ 188–89; *see also* Pls.' Opp. to Fleet Motion at 6.) The plaintiffs allege that Fleet has mishandled these proceeds and used them as leverage in this litigation, that Fleet's acceptance of the proceeds has interfered with the plaintiffs' ability to obtain the full amounts allegedly owed by State Farm, and that Fleet accepted the proceeds without making any independent estimates of the losses involved. (Compl.¶¶ 188–96.)

The plaintiffs' first five causes of action are against the State Farm defendants. The first two raise a number of claims of discrimination, including discriminatory cancellations of the Policy. The plaintiffs' third claim is for negligent property damage, unlawful trespass and conspiracy to engage in a number of the wrongs alleged in the Second Amended Complaint. The plaintiffs' fourth cause of action is for willful and deliberate fraud in violation of Sections 349 and 350 of New York General Business Law, and the plaintiffs' fifth cause of action alleges that the State Farm defendants engaged in a pattern of racketeering activity in violation of the civil

RICO statute, specifically, 18 U.S.C. § 1962(c) and (d).

The plaintiffs remaining claims are against Fleet. The plaintiffs' sixth cause of action alleges bad faith, tortious interference with contract, breach of fiduciary duty, negligence, unjust enrichment and constructive fraud against Fleet. The plaintiffs' seventh cause of action raises claims of discrimination, and the plaintiffs' eighth, and final, cause of action alleges that Fleet conspired or colluded with others to commit a number of the underlying wrongs alleged in the Second Amended Complaint.

### IV.

■ Fleet moves to dismiss all of the claims in the Second Amended Complaint insofar as they are raised on behalf of the plaintiffs' infant children. It is unclear whether the Second Amended Complaint raises any such claims, but the Complaint does name "the Burrell Family" as a plaintiff in the caption, and does define this term as "include[ing] MR, and MRS. MICHAEL BURRELL ... and their two infant children." (Compl.¶ 1).

■ As the Court explained in its prior Opinion and Order, while the Burrells may bring suit on behalf of their children, Fed. R.Civ.P. 17(c), a "non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Found., Inc.,* 906 F.2d 59, 61 (2d Cir.1990). The plaintiffs are still maintaining this action *pro se,* and have not obtained counsel for their children. The Burrells also have not attempted to answer Fleet's motion to dismiss any claims raised on behalf of their children. To the extent that the Second Amended Complaint raises any such claims, these claims are therefore dismissed without prejudice to renewal through competent counsel.

### V.

■ Fleet moves to dismiss the plaintiffs' claims for bad faith and willful negligence insofar as these claims are based on the allegation that Fleet failed to file a proof of loss with State Farm on behalf of the plaintiffs after the fire. (*See, e.g.,* Compl. ¶¶ 278) (alleging "negligent failure under the contract" to file a proof of loss; alleging that Fleet "negligently failed its obligation to file the sworn statement in proof of loss and breached the policy as a matter of law"). In its previous Opinion and Order, the Court already dismissed with prejudice a number of analogous claims against Fleet for breach of contract and the implied covenant of good faith and fair dealing on the grounds that Fleet had no obligation to file any such proof of loss, and that the Burrells had an affirmative obligation under the Mortgage Agreement to make such notification. *See Burrell I,* 2001 WL 797461, at *7–8. The plaintiffs have not moved for reconsideration of that decision, and have not provided any authority in their opposition papers that would warrant reconsideration. Instead, they simply raise claims for an alleged "negligent" breach of contract, and for breach of the implied covenant of good faith and fair dealing, which are purportedly distinguishable from their prior breach of contract claims.

The Mortgage Agreement affirmatively obligated the plaintiffs to notify State Farm of any losses or damages to the Residence or their personal property in the Residence, and only gave Fleet the right to do so in case the plaintiffs failed to meet this obligation. Mortgage Agreement ¶ 5, at 4, attached as Ex. 1 to Ex. C to Pl.'s Aff. in Opp. to Fleet's Motion ("If there is a loss or damages to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the

loss or damage occurred, then the Lender may do so."). In these circumstances, the plaintiffs cannot succeed on a claim for negligent breach of contract or breach of the implied covenant of good faith and fair dealing for Fleet's not exercising this right. *See, e.g., Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 193 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract has been violated."); *Abraham v. Penn Mut. Life Ins. Co.,* No. 98 Civ. 6439, 2000 WL 1051848, at *3 (S.D.N.Y. Jul. 31, 2000) (no claim for breach of implied covenant of good faith and fair dealing independent of the claim for breach of contract). Hence, the plaintiffs' claims for bad faith and willful negligence are dismissed insofar as they are based on the contention that Fleet somehow improperly failed to notify State Farm of these losses.

## VI.

■ The plaintiffs allege that Fleet breached a fiduciary duty to the plaintiffs, committed the tort of unjust enrichment, and breached the implied covenant of good faith and fair dealing inherent in the Mortgage Agreement by accepting proceeds for the loss from State Farm that allegedly understated the amount of loss. The plaintiffs argue that Fleet should not have accepted these proceeds without first making an independent determination of the amount of loss, and that Fleet handled these proceeds inappropriately, thereby damaging the plaintiffs.

The Mortgage Agreement clearly states that "[i]f [the plaintiffs] abandon the Property, or if [they] do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums

Secured." Mortgage Agreement ¶ 5, at 5, attached as Ex. 1 to Ex. C to Pl.'s Aff. in Opp. to Fleet's Motion. If Fleet had a contractual right to receive these proceeds, then this right would undermine the plaintiffs' claims based on receipt of the proceeds. *See, e.g., Apfel v. Prudential–Bache Secs. Inc.,* 81 N.Y.2d 470, 600 N.Y.S.2d 433, 616 N.E.2d 1095, 1098–99 (1993) (dismissing claims for unjust enrichment because "[t]he transaction is controlled by the express agreement of the parties and their rights and liabilities are to be determined solely on theories of breach of contract and the partial defense of waiver."); *Clark–Fitzpatrick,* 521 N.Y.S.2d 653, 516 N.E.2d at 193 (existence of valid and enforceable contract governing subject matter precludes recovery in quasi-contract for events arising out of the same subject matter); *Abraham,* 2000 WL 1051848, at *3 (dismissing claim for breach of implied covenant of good faith and fair dealing because terms of valid contract governed the same subject matter); *Davidson Metals Corp. v. Marlo Dev. Co.,* 238 A.D.2d 465, 656 N.Y.S.2d 675, 676 (1997) (no claim for unjust enrichment for benefits obtained pursuant to voluntary contractual agreement). However, it cannot be determined as a matter of law that this provision was properly triggered. Moreover, it cannot be determined as a matter of law whether the receipt of any proceeds under this or any related provision effectively placed these proceeds into a trust, which may have created fiduciary or other duties on the part of Fleet to handle the proceeds in an appropriate manner. *Cf., e.g.,* N.Y. Real Prop.Law § 254(4) (requiring that insurance proceeds for losses on a property that are received by mortgagee remain in trust in some circumstances). Hence, viewing the Second Amended Complaint in a light most favorable to the *pro se* plaintiffs, the plaintiffs claims for breach of fiduciary

438

duty, beach of the implied covenant of good faith and fair dealing and unjust enrichment cannot be dismissed as a matter of law.

## VII.

█ The plaintiffs also contend that Fleet tortiously interfered with their insurance contract with State Farm by accepting the proceeds from State Farm. The plaintiffs contend that by accepting these proceeds when Fleet knew that the plaintiffs and State Farm were litigating the issue of coverage, Fleet effectively interfered with State Farm's fulfillment of its obligations under the policy.

█ In order to establish a claim for tortious interference, the plaintiffs must prove that: (1) a contract existed between them and a third party, State Farm in this case; (2) Fleet knew about the contract; (3) Fleet intentionally induced State Farm to breach the contract or rendered performance impossible without justification; and (4) the plaintiffs incurred damages as a result of this conduct. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1375 (1996); *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289, 292 (1993).

In this case, it cannot be determined from the pleadings whether Fleet induced any breaches of the insurance agreement or whether Fleet's actions in accepting the allegedly inadequate settlement proceeds caused the plaintiffs to receive less than they were entitled to receive under their insurance agreement with State Farm. In these circumstances, Fleet's motion to dismiss the plaintiffs' claims for tortious interference must be denied.

## VIII.

█ The plaintiffs raise a number of claims of fraud and constructive fraud against Fleet. In order to establish a claim for fraud under New York law, a plaintiff must demonstrate (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) was made with the intention of inducing reliance; and (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff. *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir.2001). In order to establish a claim for constructive fraud, the plaintiffs must establish the same elements as a claim for fraud, except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties. *Klembczyk v. Di Nardo*, 265 A.D.2d 934, 705 N.Y.S.2d 743, 744 (4th Dep't 1999).

█ Fleet and State Farm move to dismiss the plaintiffs' claims for fraud and constructive fraud pursuant to Rule 9(b) of the Federal Rules of Civil Procedure for failure to plead the alleged fraud with sufficient particularity. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b); *see also Four Finger Art Factory v. Dinicola*, No. 99 Civ. 1259, 2001 WL 21248, at *5 (S.D.N.Y. Jan. 9, 2001); *Burrell I*, 2001 WL 797461, at *11. To meet the requirements of Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993). Although Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). This strong inference can be established either "(a) by alleging facts to show

that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.; accord PI, Inc. v. Ogle,* 932 F.Supp. 80, 84 (S.D.N.Y.1996).

■ With regard to the claims against Fleet, the plaintiffs have identified a number of allegedly untrue statements that Fleet made and have done so with sufficient particularity to meet the particularity prerequisites of Rule 9(b). The plaintiffs allege, in particular, that Fleet falsely indicated on a number of occasions that it had not received a notice of declination when in fact it had received this notice on April 12, 1999; that Fleet indicated falsely that the proceeds could only be used for repairs; and that Fleet falsely stated that it had no obligation to submit a sworn statement in proof of loss to State Farm. (*See, e.g.,* Compl. ¶¶ 178, 186, 188, 191.) However, none of the statements that the plaintiffs identify with particularity are instances of fraud because the plaintiffs have not alleged that they relied upon any of these allegedly false statements, or that any damages were caused by such reliance. The plaintiffs' simple complaint is that Fleet made a number of false statements, which the plaintiffs either knew were false or in order to cover up other alleged wrongful acts. Hence, the plaintiffs have failed to allege any actionable claims for *fraud* against Fleet with sufficient particularity, and these claims are dismissed.

The claims of fraud relating to State Farm are deficient for the same reason. The plaintiffs have identified numerous allegedly untrue statements on the part of State Farm with sufficient particularity to meet the particularity requirements of Rule 9(b) standing alone. (*See, e.g.,* Compl. ¶¶ 24, 69–77, 123–30). However, the plaintiffs have not alleged that any of these untrue statements were statements on which the plaintiffs detrimentally relied.

Indeed, the plaintiffs explain that they knew various statements were false, such as the statements accusing the plaintiffs of not scheduling appointments to inspect the Residence. Hence, the plaintiffs have not pleaded with particularity any actionable fraud against State Farm. The claims for fraud against State Farm are therefore also dismissed.

### IX.

■ Counts One and Seven of the Second Amended Complaint raise a number of claims of discrimination against Fleet and State Farm in violation of the Equal Protection Clause of the United States Constitution, 42 U.S.C. §§ 1981, 1982, 1985 and 1988, the Fair Housing Act, and analogous provisions of the New York City Human Rights Law and New York City Administrative Code. In its previous Opinion and Order, the Court dismissed a number of analogous claims for failure to plead facts giving rise to an inference of discrimination. *See Burrell I,* 2001 WL 797461, at *9–11. Both Fleet and State Farm move to dismiss the discrimination claims in the Second Amended Complaint on the same grounds. The defendants' motions are limited, in this regard, to the contention that the Second Amended Complaint has not cured any of the deficiencies identified in the First Amended Complaint and instead relies on conclusory allegations of discriminatory intent. The defendants contend that the plaintiffs should have pleaded a prima facie case of discrimination instead but failed to do so.

In *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the Supreme Court recently clarified that, contrary to the prior rule in this Circuit, a plaintiff raising a claim for discrimination need not plead facts sufficient to give rise to an inference of discrimination to survive a motion to dismiss and

must, instead, merely provide a short and plain statement of the claim showing that the plaintiff is entitled to relief. The plaintiffs' discrimination claims meet this standard. The plaintiffs' claims clearly allege that Fleet and State Farm took a number of adverse actions against them on the basis of their race, and in light of the Supreme Court's recent holding in *Sorema*, the plaintiffs are not required to plead any additional facts giving rise to an inference of discriminatory intent. Fleet's and State Farm's motions to dismiss the plaintiffs' discrimination claims for failure to plead a prima facie case of discrimination are therefore denied.

### X.

■ Fleet moves to dismiss the plaintiffs' claims for conspiracy on the ground that the plaintiffs have allegedly failed to plead the elements of such a claim with sufficient particularity to place Fleet on notice of the nature and basis of the claim and thereby meet the basic requirements of notice pleading set forth in Rule 8(a) of the Federal Rules of Civil Procedure. To establish a claim for a conspiracy in a civil action, a plaintiff must prove, at minimum, (i) an agreement between the alleged conspirator and the alleged wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy. *See, e.g., Richardson v. Artrageous, Inc.*, No. 93 Civ. 5221, 1994 WL 97222, at *4 (S.D.N.Y. Mar. 18, 1994). Fleet argues that the plaintiffs "do not identify the individuals who made the agreement, where the agreement was made, and when it was made," and that the plaintiffs "provide absolutely no factual basis for finding an agreement to defraud between Fleet and State Farm." (Fleet Br. at 17.) However, the plaintiffs clearly allege a conspiracy between Fleet and State Farm to commit a number of the underlying acts that were allegedly wrongful in this case, and these claims are sufficient to meet the minimal

standards of notice pleading set forth in Rule 8(a). *Cf. Sorema*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (discussing requirements of notice pleading under Rule 8(a)). Fleet's motion to dismiss these conspiracy claims is therefore denied.

### XI.

■ Fleet moves to strike the portions of the Second Amended Complaint seeking punitive damages and attorneys' fees. These motions address the relief to which the plaintiffs are entitled rather than the sufficiency of the claims in the pleadings, and it would be premature to address these issues before these claims have been decided.

For example, Fleet argues that the plaintiffs have failed to plead sufficient facts to establish an award for punitive damages under the standard applicable to breaches of contract. *See New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 767 (1995) (to state a claim for punitive damages for a breach of contract, a plaintiff must plead that (1) the conduct was actionable as an independent tort, (2) the tortious conduct was of an egregious nature that is morally culpable or actuated by evil and reprehensible motives, evincing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply criminal indifference to civil obligations; (3) the egregious conduct was directed at the public generally; and (4) the egregious conduct was part of a pattern directed at the public generally). However, the plaintiffs have alleged a number of other claims in this case, which are not coextensive with any claims for breach of contract, and it is not yet clear whether the plaintiffs will be able to establish the relevant mental states and other facts required to obtain punitive damages on their various claims. Fleet has not made any attempt to set forth the applicable standards for punitive damages

relating to any of the plaintiffs' causes of action that are not covered by contract.

Similarly, Fleet's argument to strike a claim for attorneys' fees is premised on the fact that the plaintiffs are presently proceeding *pro se*, but it is impossible to determine at this point whether the plaintiffs will continue in this *pro se* status or whether the plaintiffs will be entitled to attorneys' fees on some other basis.

Fleet's motions to strike portions of the Ad Damnum Clause are therefore denied as premature. Fleet may raise the issues of the appropriateness of any punitive damages and/or attorneys' fees again at the conclusion of this case if appropriate.

## XII.

 State Farm moves to dismiss the plaintiffs' claims raised pursuant to § 3604 of the Fair Housing Act on the ground that this Act allegedly does not prohibit the kind of alleged discriminatory failures to pay out insurance proceeds that the plaintiffs have alleged in this case. The relevant subsections of § 3604 make it unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, religion, color, sex, familial status, or national origin.

42 U.S.C. § 3604. The Court of Appeals for the Second Circuit has explained that "the FHA prohibits those practices that make housing unavailable to persons on a discriminatory basis as well discriminatory

terms and conditions with respect to housing that is provided." *Hack v. The President & Fellows of Yale College*, 237 F.3d 81, 88 (2d Cir.2000). The Act "was designed primarily to prohibit discrimination in the sale, rental, financing, or brokerage of private housing and to provide federal enforcement procedures for remedying such discrimination so that members of minority races would not be condemned to remain in urban ghettos in dense concentrations where employment and educational opportunities were minimal." *Otero v. New York City Hous. Auth.*, 484 F.2d 1122, 1133 (2d Cir.1973).

Although § 3604 does not specifically mention the provision of insurance, a number of courts have found that § 3604 applies to insurance companies that engage in so-called "redlining"—or the arbitrary refusal to underwrite risks relating to property insurance on the basis of race or relating to people in certain geographical locations based on race, or the failure to provide insurance to such persons on equal terms and conditions due to race. *See, e.g., Nationwide Mut. Ins. v. Cisneros*, 52 F.3d 1351 (6th Cir.1995); *United Farm Bureau Mut. Ins. Co. v. Metropolitan Human Relations Comm'n*, 24 F.3d 1008 (7th Cir.1994); *The NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir.1992); *but see Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 423–24 (4th Cir.1984). Part of the rationale for these holdings is that property insurance is often a condition for obtaining housing or rentals, such that redlining practices can effectively prevent equal opportunities to housing or rental resources. *See generally NAACP*, 978 F.2d at 297–98 ("[Plaintiffs] contend that ... [l]enders require their borrowers to secure property insurance. No insurance, no loan; no loan, no house; lack of insurance thus makes housing unavailable."); *McDiarmid v. Economy Fire & Cas. Co.*, 604 F.Supp. 105, 107 (S.D.Ohio 1984) ("It is elementary that without insurance,

mortgage financing will be unavailable, because a mortgage lender simply will not lend money on the property. Without mortgage financing, homes cannot be purchased.").

■ Section 3614a of Title 42 also authorizes the Secretary of Housing and Urban Development ("HUD") to make rules to carry out the statute, and HUD has promulgated regulations that enumerate a number of acts that HUD considers to be prohibited by the FHA. *See* 24 C.F.R. § 100.70. These regulations identify, among other acts, "[r]efusing to provide ... property or hazard insurance for dwellings *or providing such ... insurance differently* because of race, color, religion, sex, handicap, familial status, or national origin." 24 C.F.R. § 100.70(d)(4) (emphasis added). HUD's interpretation of § 3604 as covering discrimination in the provision of insurance is not unreasonable; hence, this interpretation is entitled to controlling weight. *See generally Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (agency regulations implementing a statute must be given "controlling weight" unless unreasonable); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 335 (2d Cir.1995).

In this case, the plaintiffs have sufficiently stated a claim against State Farm for violation of the FHA. The plaintiffs allege that, because of their race, State Farm refused to pay insurance claims for which the plaintiffs were entitled to be paid and/or offered the plaintiffs inadequate proceeds to cover a number of damages, including most prominently fire damages, to their home. These damages allegedly made the home unlivable for a substantial period of time. The plaintiffs contend that State Farm handled their claims differently because of their race. The plaintiffs therefore contend that State Farm provided insurance differently to them because of their race and indeed the failure to pay the claims in a non-discriminatory way deprived the plaintiffs of housing. *Cf., e.g., United Farm Bureau*, 24 F.3d at 1016 ("The federal Fair Housing Act applies to discriminatory denial of insurance as well as *discriminatory refusal to renew insurance that effectively precludes ownership of housing on the basis of race....* ") (emphases added). Such conduct is actionable under the FHA, a conclusion that is consistent with HUD regulations as well as the Supreme Court's instruction that the provisions of the FHA be given a "generous construction." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *see also Hack*, 237 F.3d at 87.[1]

---

**1.** This is not a case like *Riley v. Transamerica Ins. Group Premier Ins. Co.*, 923 F.Supp. 882 (E.D.La.1996), *aff'd*, 117 F.3d 1416 (5th Cir. 1997), in which the plaintiff raising the insurance claim, while a resident of the damaged home, was neither the owner nor the mortgagor of the property. *Id.* at 884. In *Riley*, the court declined to extend the FHA to a claim by a resident of a home that an insurance company did not adequately or timely address his damage claims. The court found that the activity of the insurance company was not related to the plaintiff's ability to obtain coverage in connection with the purchase of a home. *Id.* at 888; *cf. also Lindsey v. Allstate Ins. Co.*, 34 F.Supp.2d 636 (W.D.Tenn.1999) (distinguishing between discrimination in the claims handling process, which may not have an effect on the availability of housing or rentals, and discrimination in the provision or renewal of insurance, which often has an intimate relation to the availability of housing and/or rentals). *Id.* at 641–42. ("The FHA would provide little vindication to the policy of nondiscrimination in housing if it prohibited property insurers from discriminating against individuals seeking a home, but then subsequently gave property insurers free reign to discriminate in the renewal of property insurance to the same individuals. Maintaining possession of a home is as important

For all of these reasons, State Farm's motion to dismiss the plaintiffs' FHA claims is denied.

### XIII.

 State Farm moves to dismiss the plaintiffs' fifth cause of action, which alleges that State Farm engaged in a pattern of racketeering activity in violation of RICO, 18 U.S.C. §§ 1962(c) and (d). In order to state a claim for damages under RICO, a plaintiff must meet two pleading burdens. First, the plaintiff must allege all of the elements of a criminal RICO violation, specifically, that (1) a "person," namely, the relevant defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983); *see also* 18 U.S.C. § 1962. Second, the plaintiff must allege that he was "injured in his business or property by reason of" the conduct constituting a criminal RICO violation. *Moss*, 719 F.2d at 17; *see also* 18 U.S.C. § 1962. State Farm argues that the plaintiffs have failed to allege a RICO "enterprise" and have failed to allege sufficient predicate acts for a RICO violation.

 With regard to the RICO "enterprise," State Farm argues that the plaintiffs' fifth cause of action names only State Farm and its employees as defendants, and appears to allege a RICO enterprise consisting only of State Farm and its employees. As State Farm correctly argues, "[a] corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88–89 (2d Cir.1999) (internal quotation marks omitted); *see also Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–62, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001) (§ 1962(c) requires some distinctness between the RICO "person" and the RICO "enterprise," which cannot be met by referring to the same entity by a different name); *Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985). State Farm also argues that the plaintiffs have failed to allege sufficient predicate acts to constitute a pattern of racketeering activity.

The plaintiffs respond in their papers that the relevant RICO enterprise consists of "State Farm subsidiaries and its parent corporation as well as ... all those who have aided and abetted defendant State Farm in its fraudulent schemes," apparently including Fleet. (Pl.'s Opp. II at 20.) The plaintiffs argue, in addition, that a defendant can be a "person" for RICO purposes and also be a part of the relevant RICO "enterprise," so long as the defendant is not the only entity comprising the "enterprise" and there is an association-in-fact between the defendant and other alleged RICO co-conspirators. *See, e.g. Bennett*, 770 F.2d at 315; *see also generally Cedric*, 533 U.S. at 163, 121 S.Ct. 2087 (noting that owner or employee of a corporation is sufficiently distinct from a corporation to allow for a RICO claim identifying the owner or employee as the RICO "person" and the corporation as the "enterprise"). However, despite many arguments in their papers to the contrary, the

---

to a homeowner as obtaining possession of a home.")

In this case, unlike in *Riley* and some of the theories of FHA liability argued for in *Lindsey*, the plaintiffs have alleged that State Farm

has provided them with insurance differently, because of their race, by refusing to cover adequately-noticed claims, and that this alleged discrimination has made their housing unavailable to them.

plaintiffs do not define the relevant RICO enterprise or person or persons in the Second Amended Complaint, and their attempts to remedy this defect derive almost wholly from their opposition papers in this motion. Similarly, while the plaintiffs contend that they have identified several acts that might constitute predicate acts of mail or wire fraud in the Second Amended Complaint in their papers, they nowhere allege these acts as predicate acts for a RICO claim in the Second Amended Complaint. On its face, the Second Amended Complaint therefore fails to plead sufficiently a civil RICO violation.

The plaintiffs have, however, made a number of arguments in their opposition papers indicating that they understand the proper pleading standards for a RICO claim, and that they may be able to cure the defects in the Second Amended Complaint. Hence, the plaintiffs' fifth cause of action is dismissed without prejudice to repleading if the plaintiffs can plead a civil RICO violation that specifically identifies the relevant RICO "enterprise," the relevant RICO "person" or "persons," and the relevant predicate acts that give rise to the alleged RICO violation. Any such repleading should not cause any delay in the progress of this case. The plaintiffs are therefore directed to file any amendments to the Second Amended Complaint to contain a civil RICO claim within twenty (20) days of the issuance of this Opinion and Order.

## XIV.

 State Farm moves to dismiss the plaintiffs' state law claims for lack supplemental jurisdiction. For the reasons discussed above, however, there are a number of federal claims still pending in this case, and State Farm's motion is therefore denied.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit.

Therefore, for the foregoing reasons:

1. The plaintiffs' motion for entry of partial judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure is denied.

2. Fleet's motion to dismiss any claims in the Second Amended Complaint that are brought on behalf of the Burrells' children is granted.

3. Fleet's motion to dismiss the plaintiffs' claims in the plaintiffs' sixth and eighth causes of action relating to bad faith and willful negligence is granted insofar as these claims are based on the allegation that Fleet failed to file a proof of loss with State Farm on behalf of the plaintiffs after the fire.

4. Fleet's motion to dismiss the plaintiffs' claims against it for breach fiduciary duty, unjust enrichment, and breach of the implied covenant of good faith and fair dealing is denied insofar as these claims relate to Fleet's acceptance and handling of the proceeds issued by State Farm.

5. Fleet's motion to dismiss the plaintiff's claim for tortious interference with contract is denied.

6. State Farm's and Fleet's motions to dismiss the plaintiffs' claims for fraud and constructive fraud are granted.

7. State Farm's and Fleet's motions to dismiss the plaintiffs claims for discrimination for failure to plead facts sufficient to give rise to an inference of discrimination are denied.

8. Fleet's motion to dismiss the conspiracy claims in the plaintiffs' eighth cause of action is denied.

9. Fleet's motion to strike the portions of the Second Amended Complaint seeking punitive damages and attorneys' fees are denied as premature.

10. State Farm's motion to dismiss the plaintiffs' claims against State Farm raised pursuant to the Fair Housing Act is denied.

11. State Farm's motion to dismiss the plaintiffs' RICO claims is granted, and the plaintiffs' RICO claims against State Farm are dismissed without prejudice to repleading within twenty (20) days of the issuance of this Opinion and Order.

12. State Farm's motion to dismiss the pendent state law claims against it for lack of supplemental jurisdiction is denied.

13. The plaintiffs' motion for judgment as a matter of law pursuant to Rule 52(c) of the Federal Rules of Civil Procedure is denied.

**SO ORDERED.**