896 F.Supp. 618 (1995)
The PRYTANIA PARK HOTEL, et al.
v.
GENERAL STAR INDEMNITY COMPANY.
Civ. A. No. 94-3743.
United States District Court, E.D. Louisiana.
August 21, 1995.
*619 Rockne Locke Moseley, Janet Mary Ahern, Moseley & Associates, New Orleans, LA, for Prytania Park Hotel Ltd., Alvin Halpern, Theone M. Halpern.
William H. Howard, III, Phelps Dunbar, New Orleans, LA, Raymond Joseph Pajares, Aubert & Burglass, Metairie, LA, for defendant.

ORDER AND REASONS
JONES, District Judge.
Pending before the Court are cross-motions for partial summary judgment which were taken under submission on a previous date without oral argument. Having reviewed the memoranda of the parties, the record and the applicable law, the Court GRANTS plaintiffs' motion for partial summary judgment in part and DENIES their motion in part. Further, the Court GRANTS defendant's motion for partial summary judgment in part and DENIES its motion in part.

Background
Plaintiffs Prytania Park Hotel, Ltd., Alvin Halpern and Theone M. Halpern (hereinafter "plaintiffs") filed this declaratory judgment action and breach of contract action against their insurer, General Star Indemnity Company, as a result of disputes as to coverage for damages arising from a fire which occurred at the Prytania Park Hotel in August 1994. (R.Doc. 1.)[1]
In January 1994 General Star Indemnity Company (hereinafter "General Star") issued a policy of insurance to plaintiffs and The Home Furnishing Stores Ltd.[2] (Exh. B attached to General Star's motion, R.Doc. 74.) The coverage under the policy included commercial property coverage, which forms the basis for the disputes herein. Optional coverage was also obtained for replacement cost of the building.
In their motion plaintiffs claim that the certain items damaged in the fire  "built-in" furniture[3] and laundry equipment  qualify as part of the "building" under the policy. Thus, plaintiffs contend that they are entitled to replacement cost of these items, not actual cash value. Plaintiffs also argue that they are entitled to replacement costs for installation of a "PBX" exchange system following damage to the hotel's prior modular telephone system during the fire. In support of these arguments, plaintiffs rely on the language *620 of the policy at issue, the Louisiana Civil Code and cases from other jurisdictions. Finally, plaintiffs maintain that they are entitled to coverage under the policy for improvements made necessary by the fire damage because of changes in the City of New Orleans building code.
In its motion General Star claims that the furniture is not part of the building but constitute "business personal property" under the policy, which should be valued at actual, i.e., depreciated, cash value, not replacement value. As to the telephone system, General Star motion's is based on its contention that it properly tendered under the policy an amount adequate to repair the hotel's telephone system. For these propositions General Star relies on the language of the policy and argues that under Louisiana law these items do not qualify as component parts of the building. In its final point, General Star contends that any costs arising from enforcement of the city's building code are specifically excluded by the plain language of the policy.
General Star does not contest plaintiffs' motion insofar as the claims as to the laundry equipment.

Law and Application

I. Summary Judgment
Pursuant to Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the moving party is entitled to judgment as a matter of law."
In opposing a motion for summary judgment, a party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(d). This burden is not satisfied by "metaphysical doubt," "conclusory allegations," or "unsubstantiated assertions." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (citations omitted). Further, factual controversies are resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Id.

II. Interpretation of Insurance Policy
In Pareti v. Sentry Indemnity Company, 536 So.2d 417, 420 (La.1988), the Louisiana Supreme Court precisely summarized the "elementary legal principles which apply to the interpretation of insurance policies."
An insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written.
An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another. If there is an ambiguity in a policy, then that ambiguity should be construed in favor of the insured and against the insurer. However, courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language.
Id. (Citations omitted.)
Further, "[w]ords and phrases used in insurance policies are to be construed in their plain, ordinary and popular sense." Central Louisiana Electric Company v. Westinghouse Electric Co., 579 So.2d 981, 986 (La. 1991).
With these precepts in mind, the Court turns to the items of coverage in dispute and the policy language applicable to those items. The Court then resolves the coverage as to those items.

III. Furniture
Plaintiffs contend in an affidavit from the hotel's general manager that the furniture at issue was "custom built to fit the individual dimensions of the rooms in which it was installed." (Affidavit of Edward M. Halpern, Exh. A, plaintiff's motion, R.Doc. 16.) The furniture "cannot be taken from location to location without being dismantled ... and is not intended to be removed from the individual rooms." Id. The general *621 manager further stated in his affidavit that "[t]he built-in modular furniture is attached to the walls with long wood screws which are drilled through sections of the modular furniture and into the walls of the hotel rooms." Id. Removal of the furniture caused "substantial damage" to the walls of the hotel. Id.
General Star's description of the furniture is similar in the sense that its insurance adjuster stated that the hotel contained "modular furniture that was attached to the walls by bolts only." (Affidavit of William A. Moulton, Exh. A, defendant's motion, R.Doc. 14.) However, the adjuster "determined that the modular furniture could easily be removed from the hotel by detaching the bolts, and that removing the furniture in this way would not substantially damage either the furniture or the building." Id. In a supplemental affidavit filed by defendants, the adjuster also stated that he observed the walls behind the modular furniture following the fire and following the furniture's removal and that the walls were not noticeably damaged due to the removal of the furniture. (Exh. A, R.Doc. 22.)
In view of these affidavits and the memoranda of defendant, the Court finds that there is no genuine issue of material fact that the furniture at issue was "custom built" for each room of the hotel. General Star has not come forward with any affidavit, deposition or other discovery answer which refutes this fact. Likewise, the Court finds that it is an undisputed fact that the intention was that the furniture be used in the specific room where it was installed, whether that installation be by screws or bolts. There is disagreement as to whether removal of the furniture would damage the hotel rooms and/or the extent of such damage. However, as will be shown, that dispute is immaterial to the Court's decision.
Having made these factual findings, the Court turns to the parties contentions under the language of the policy. Plaintiffs contend that the furniture qualifies as "permanently installed fixtures" under Section A.1.a.(2)(a) of the Coverage Section of the "Building and Personal Property Coverage Form" of the policy, Form CP 00 10 10 91. (Exh. B, defendant's motion, R.Doc. 14.) Such "permanently installed fixtures" would fall under the replacement cost option of the policy elected by plaintiffs because these fixtures are included in the policy's definition of the term "building." Id.
Defendant counters that the furniture qualifies as "furniture and fixtures" under the Business Personal Property subsection under Coverage, Section A.1.b.(1). Because plaintiffs did not ask for replacement cost coverage for such personal property, General Star argues that plaintiffs are only entitled to actual cash value of the furniture.
At first glance, it would appear that the furniture at issue falls distinctly within the category of business personal property. However, in view of the findings of fact made above, the Court must ascertain the meaning of the words "permanently installed fixtures" in their "plain, ordinary and popular sense." Central Louisiana Electric Co., 579 So.2d at 986.
"Permanent" is defined as "[l]asting or meant to last indefinitely." Webster's II New Riverside University Dictionary (1994). "Install" means "[t]o set in position or adjust for use." Id. "Fixture" is defined as "[s]omething securely fixed in place." Id.
In view of the factual findings that the furniture at issue was custom built, intended to be used in a specific room and not moved from room to room, and was attached to the walls in each room, and, further, in view of the plain, ordinary meaning of the words "permanently installed fixtures," the Court finds that the furniture at issue clearly constitutes "permanently installed fixtures" of the "building" under the plain, unambiguous language of the policy. Therefore, plaintiffs are entitled to replacement cost for the damaged furniture, not actual cash value, and to summary judgment as to this issue.[4]

*622 IV. Telephone System
The next issue is whether the cost of a telephone "PBX" exchange that replaced a damaged "modular unit" in the fire should be covered under the policy.
The affidavit of the hotel's general manager states that the "PBX" exchange "replaced a modular unit that was damaged beyond repair in the fire" and then describes in detail how the "PBX" exchange is attached to the interior wall of the hotel with screws. (Affidavit of Edward M. Halpern, Exh. A, plaintiffs' motion, R.Doc. 16.) Further, the "PBX" is connected to the power source in the hotel and "is integrated into the hotel telephone wiring and is hooked-up to both the inhouse telephone wiring and the exterior telephone cables provided by the local telephone utility." Id. "The PBX was placed in the hotel with the purpose of it being a permanent installation used to distribute telephone calls from the Hotel's rooms to exterior `trunk lines' provide by the local telephone company." Id.
The affidavit of General Star's adjuster states that he contacted representatives of another company that repaired telephone systems and that a representative of that company "examined the telephones and informed [the adjuster and the hotel's general manager] that the telephones could be successfully cleaned and repaired." (Affidavit of William A. Moulton, Exh. A., defendant's motion, R.Doc. 14.) Further, the adjuster states that General Star unconditionally tendered "an amount sufficient to cover the cost of rewiring the telephone system and cleaning and fully repairing the telephones damaged in the fire" based on an estimate by the repair company. Id. The affidavit of General Star's adjuster is silent as to the PBX exchange.
The policy provides as to loss payment that:
In the event of loss or damage covered by this Coverage Form, at our option, [General Star] will either:
(1) Pay the value of lost or damaged property;
(2) Pay the cost of repairing or replacing the lost of damaged property;
(3) Take all or any part of the property at an agreed or appraised sale; or
(4) Repair, rebuild or replace the property with other property of a like kind and quality.
Section E.4.a., Form CP 10 10 91. (Exh. B, defendant's motion, R.Doc. 14.)
In the present case, plaintiffs argue that they are not seeking replacement costs of the telephones themselves but replacement costs for the newly installed "PBX" exchange. Indeed, the Court agrees with General Star that on the basis of the unambiguous language of the policy, General Star clearly had the right to clean and repair the telephones.
However, it is unclear on the basis of the record whether the cost of rewiring the telephone system or repair to the telephones included any costs for repair and/or effective replacement of the modular unit. This is a genuine issue of material fact which precludes summary judgment in favor of either side.
Neither does plaintiffs' characterization of the PBX as "personal property ... used to maintain or service the building," another meaning of "building" under the policy,[5] require ruling in plaintiffs' favor. Similarly, plaintiffs' description of the alleged permanent attachment of the "PBX" device is not helpful in resolution of this issue. Instead, the parties have left unanswered certain questions. These include but are not necessarily limited to whether the original modular device was permanent and/or attached so as to be a "permanently installed fixture," whether the modular unit had characteristics that qualified it as "personal property ... used to maintain or service the building," or whether the modular unit could have been  or was  cleaned and repaired. These outstanding issues preclude summary judgment.

V. Laundry Room Equipment
Plaintiffs seek summary judgment as to commercial laundry equipment  a washer and dryer  destroyed in the fire. In the affidavit of the General Manager, he states *623 that the washer was physically connected to the building by two rigid metal pipes, two "direct wire" electrical lines, a large drainage pipe and "bolted to the floor." (Affidavit of Edward M. Halpern, Exh. A, plaintiffs' motion, R.Doc. 16.) The dryer was similarly connected to the building by "direct wire" electrical lines and venting and also "bolted to the floor." Id. "These devices were set up in the hotel to provide continuing laundering services for the hotel's guests and staff and no fundamental changes in the location or operation of this machine [sic] were ever contemplated." Id.
Defendant offers no opposition to plaintiffs' motion on this issue.
The Court finds that, in view of the uncontested material facts set forth in the general manager's affidavit, the commercial washer and dryer qualify as "permanently installed fixtures" of the "building" as those terms are used in their policy and under their plain, common, and unambiguous meaning. The Court also finds that the machines fall within another definition of "building" under the policy as "personal property ... used to maintain or service the building or structure or its premises, including ... appliances used for ... laundering." Section A.1.a.(4)(d), Form CP 00 10 10 91. (Exh. B, defendant's motion, R.Doc. 14.) Thus, summary judgment is proper in plaintiffs' favor as to this issue, and plaintiffs are entitled to replacement costs under the policy for the commercial laundry equipment.[6]

VI. "Law or Ordinance" Exclusion
The final question is the applicability of an exclusion under the policy. It is uncontested that in rebuilding the laundry room after the fire, plaintiffs were required to add a sprinkler system to that area in accord with the City of New Orleans building code. It is also uncontested that prior to the fire no such sprinkling system existed in the hotel.
General Star contends that the following Exclusion is applicable, substantiating its refusal to pay for the installation of the sprinkling system:
B. Exclusions
1. [General Star] will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
a. Ordinance or Law
The enforcement of any ordinance or law:
(1) Regulating the construction, use or repair of any property....
Form CP 00 10 30 10 91. (Exh. B, defendant's motion, R.Doc. 14).
In opposition and in support of their own motion on this issue, plaintiffs argue that the policy's language demonstrates that the "enforcement" of the ordinance must cause the loss complained of in order for the exclusion to apply. Further, plaintiffs contend that the loss plaintiffs suffered was not from the enforcement of the building code but from the fire.
Both parties cite cases in support of their argument, with General Star citing a Louisiana case and plaintiffs citing cases from other jurisdictions. The Court finds, however, that it does not have to look to other cases but, once again, only to the plain, unambiguous language of the policy to decide this issue.
Although it is true that the fire caused the damage to the property which necessitated the repair, the policy language specifically states that losses arising from enforcement of an ordinance or regulation, such as the building code requirement for a sprinkler system, are excluded "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." In other words, the Court finds that it is inconsequential under the language of the policy whether the fire which caused the loss occurred before the repair that required installation of a sprinkler system. Plaintiffs' costs arising from enforcement of the City of New Orleans' building code, even though they arose from the repair of the hotel after the *624 fire, are simply excluded according to the policy's plain, unambiguous language.
Thus, summary judgment is proper in defendant's favor on this issue.

VII. Conclusion
The Court finds that plaintiffs are entitled to summary judgment as to the issues of whether plaintiffs are entitled to replacement cost payment under the insurance policy issued by General Star for the modular furniture and for the commercial laundry equipment. As to whether plaintiffs are entitled to replacement costs for the phone system, the Court finds that there are genuine issues of material fact which preclude summary judgment in favor of either plaintiffs or defendant.
Finally, as to the question of whether the "ordinance" exclusion is applicable, the Court finds that summary judgment is proper in defendant's favor.
Accordingly,
IT IS ORDERED that plaintiffs' "Cross Motion for Partial Summary Judgment" is GRANTED in part and DENIED in part.
IT IS FURTHER ORDERED that defendant's "Motion for Partial Summary Judgment" is GRANTED in part and DENIED in part.
NOTES
[1] The parties have since filed a joint motion dismissing with prejudice plaintiffs' claims as to violation of certain Louisiana insurance statutes. (R.Doc. 19.)
[2] This entity is not a party to this lawsuit.
[3] The parties do not dispute that this modular furniture consisted of armoires, night stands, entertainment centers/chest of drawers, desks, wall mirrors and hanging luggage racks. (Plaintiffs' Statement of Uncontested Material Facts, No. 3, attached to plaintiffs' motion, R.Doc. 16; Defendant's "Reply to Plaintiffs' Statement of Undisputed Facts," No. 3, Exh. A, defendant's memorandum in opposition to plaintiffs' motion, R.Doc. 20.) Defendant disputes that the furniture was "built-in." Id.
[4] Having made this determination based on the language of the policy, the Court finds it unnecessary to decide whether the furniture qualifies as a "fixture" as that term is legally construed under the Louisiana Civil Code or whether cases from other jurisdictions are persuasive as to this issue.
[5] Section A.1.a.(4)(d), Form CP 00 10 10 91. (Exh. B, defendant's motion, R.Doc. 14.)
[6] In view of this decision, as with the decision on the issue of the furniture, it is unnecessary to consider any Civil Code-based arguments of plaintiffs as to summary judgment on this issue.