Judgment rendered February 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,381-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KELLY ARNOLD                                    Plaintiff-Appellant

versus

ANPAC LOUISIANA                            Defendants-Appellees
INSURANCE COMPANY, ET AL

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 20212475

Honorable C. Wendell Manning, Judge

* * * * *

ANTHONY J. BRUSCATO                       Counsel for Appellant


                                          Counsel for Appellee,
DAVENPORT, FILES, & KELLY, LLP            ANPAC Louisiana
By: Grant M. Tolbird                      Insurance Company


                                          Counsel for Appellee,
LUGENBUHL, WHEATON, PECK,                 JNT Home
RANKIN & HUBBARD                          Improvements, LLC
By: Gregory P. Aycock

* * * * *

Before STEPHENS, MARCOTTE, and ELLENDER, JJ.

**STEPHENS, J.,**

This appeal arises from the Fourth Judicial District, Parish of Ouachita, the Honorable Wendell Manning, J., presiding. Plaintiff, Kelly Arnold, urges that the trial court erred in granting the motion for summary judgment filed by defendant, ANPAC Louisiana Insurance Company ("ANPAC"), as well as granting part of ANPAC's motion to strike hearsay statements made by Ms. Arnold in her affidavit. For the following reasons, we affirm.

## FACTS/PROCEDURAL HISTORY

Ms. Arnold owns a home on Pinewood Drive in West Monroe, Louisiana, and her home is insured by ANPAC. Mr. and Mrs. LeBrun ("the LeBruns") live next door to Ms. Arnold, and the Lebruns' home is insured by Republic Group LA. During Hurricane Laura on August 27, 2020, a large pine tree located on the LeBruns' property fell on Ms. Arnold's home, causing severe damage. According to Ms. Arnold's deposition, the fallen tree covered half of her roof, including the area over her bedroom, washroom, and sitting room. Following the hurricane, Ms. Arnold contacted ANPAC to report the incident, and the insurer reimbursed Ms. Arnold for the cost to remove the tree from her roof.

Shortly after the storm, ANPAC sent Frank Kennedy, a senior field claims specialist, to inspect the property and prepare an estimate of the damages to Ms. Arnold's property. After providing Ms. Arnold with the estimate, ANPAC issued payment in the amount of $23,255.95 to Ms. Arnold, representing the actual cash value of the repairs to her dwelling and a shed that had been damaged. Ms. Arnold then contracted with JNT Home Improvement ("JNT") to complete the repairs on her home. After JNT

began making repairs, Ms. Arnold requested that Mr. Kennedy return to re-inspect the property. Following the re-inspection, Mr. Kennedy prepared a revised estimate which included some non-roof related damage to the house. This information was provided to Ms. Arnold, and ANPAC provided additional payment to her in the amount of $3,723.26. This amount represented the increase in the actual cash value of the repairs. The total Ms. Arnold received following both of Mr. Kennedy's inspections was $26,979.21.

As JNT made repairs to Ms. Arnold's roof, she became dissatisfied with the work that was being done. In her deposition, Ms. Arnold complained that portions of the roof were uneven. Ms. Arnold alleged that she found screws all over her yard, and she felt there were discrepancies in the square footage that JNT replaced versus what the insurance would cover. Similarly, Ms. Arnold stated that the repairs did not match the color or thickness of the roof, and she noticed that parts of her roof were not flush, resulting in the roof looking as though it was leaning. Because of her dissatisfaction with JNT's performance, Ms. Arnold terminated her contract with JNT before the repairs were completed. Although the repairs to Ms. Arnold's home stalled and have yet to be completed, ANPAC provided an additional $6,535.39 in payment to Ms. Arnold, resulting in her receiving the full amount of the recoverable depreciation.

On August 18, 2021, Ms. Arnold filed a petition against the LeBruns, Republic Group, ANPAC, and JNT. In her petition, Ms. Arnold alleged that the LeBruns knew or should have known of the risk that the tree posed to Ms. Arnold's property and were negligent in failing to have the tree inspected/removed. Next, Ms. Arnold claimed that ANPAC should have

2

paid the full amount necessary to repair the damage to her home but instead only tendered partial payment. Lastly, Ms. Arnold claimed that JNT's work was defective, deficient, and incomplete.

Answers were filed by the various defendants, with JNT also filing a reconventional demand against Ms. Arnold. An answer to the reconventional demand was filed by Ms. Arnold, and a motion and order for a pretrial conference was filed on August 24, 2022. On September 30, 2022, the LeBruns and Republic Group filed a motion for summary judgment. ANPAC also filed a motion for summary judgment on October 27, 2022. Ms. Arnold filed oppositions to both motions.

On November 29, 2022, the trial court held a hearing on the two motions. The first summary judgment motion, filed by the LeBruns and Republic Group, asserted that Ms. Arnold had no evidence that the tree that fell on her home exhibited a ruin, vice, or defect that the LeBurns knew or should have known about. The trial court granted the motion and rendered judgment on December 12, 2022, dismissing with prejudice the claims against the LeBruns and Republic Group. Along with ANPAC's summary judgment motion, ANPAC filed a motion to strike Ms. Arnold's affidavit.

The hearing on the motion for summary judgment was ultimately continued so Ms. Arnold could address the legal arguments raised in ANPAC'S motion, including the applicability of *McKoin v. State Farm Fire & Cas. Co.*, 36,429 (La. App. 2 Cir. 10/23/02), 830 So. 2d 437. The court also directed Ms. Arnold to fully supplement her responses to discovery. The court granted in part and denied in part ANPAC's motion to strike, reasoning that the following statements were considered hearsay:

1. "After the second estimate and second payment from the insurance company, I called the insurance company adjustor and spoke with him to see about getting an estimate to include the omitted items and an increase on the items that hadn't been fully paid. He said the insurance company had paid an amount sufficient to cover the cost of repairing my house and the company would not make any further payment."

2. "An expert who examined the house at my attorney's request said that he is concerned about the integrity of the moisture barriers which are supposed to be in place to prevent water intrusion because the type of damage the house sustained is likely to include damage to the moisture barriers. … The expert tells me that there's no way to know at this point whether the moisture barriers are intact or not. The basic problem, from my point of view, is that according to the expert, the moisture barriers were probably damaged and since the insurance company estimates did not include any money to pay for replacing the moisture barriers, I am pretty sure the moisture barriers were not replaced. The insurance company has not made any attempt to assess the situation."

3. "I called several a/c companies to try to get this repair done, but all of them told me the same thing: the cage or casing cannot be replaced, the only thing to do is replace the entire unit."

On January 17, 2023, the court heard arguments on ANPAC's motion for summary judgment. Although counsel for Ms. Arnold failed to appear, the court considered the briefs submitted by both parties as well as arguments made by ANPAC at the hearing. ANPAC articulated that it had paid Ms. Arnold for the repairs to her roof, and she did not dispute the amount she received from ANPAC. Furthermore, ANPAC asserted that Ms. Arnold was not entitled to loss of use coverage under the policy because she continuously had lived in the home after the damage occurred. Lastly, ANPAC stated that Ms. Arnold failed to comply with the policy provisions so as to be able to seek compensation for her loss of personal property. ANPAC also re-urged its motion to strike Ms. Arnold's affidavit, and the

4

trial court struck another statement in Ms. Arnold affidavit. The trial court reasoned the following statement was hearsay:

> "I've been told verbally that the cost of repairing the deck would run around six thousand dollars."

Ultimately, the trial court concluded that no genuine issues of material fact existed as to ANPAC and its application of the policy to Ms. Arnold and her home, and the court granted ANPAC's motion for summary judgment. Ms. Arnold filed the instant appeal. On October 24, 2023, the LeBruns and Republic Group were dismissed from this appeal. Thus, this appeal is limited to Ms. Arnold's assignments of error as they pertain to ANPAC.

## DISCUSSION

Ms. Arnold first asserts that the trial court erred in granting ANPAC's motion to strike statements made in her affidavit as hearsay. Ms. Arnold also urges that the trial court erred in granting ANPAC's motion for summary judgment because ANPAC failed to reimburse her for the loss of personal property and for other structural damage not considered in Mr. Kennedy's inspection and estimates.

In response, ANPAC argues that the statements in Ms. Arnold's affidavit were correctly stricken as hearsay because the alleged statements were made by unidentified individuals. Similarly, ANPAC suggests that the trial court properly granted its summary judgment motion because ANPAC met its obligations under its policy contract with Ms. Arnold, who failed to show otherwise.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d

880; *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, *writ denied*, 14-2304 (La. 1/23/15), 159 So. 3d 1058. Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish those ends. *Id.*

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*

A genuine issue is one about which reasonable persons could disagree. *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459 (La. 4/12/05), 907 So. 2d 37, *citing Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So. 2d 730; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Suire*, *supra*; *Chanler v. Jamestown*

6

*Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230.

A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only in light of the substantive law applicable to the case. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876; *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So. 2d 131.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Leisure Recreation & Ent., Inc. v. First Guaranty Bank*, 21-00838 (La. 3/25/22), 339 So. 3d 508; *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Elliott v. Continental Cas. Co.*, 06-1505 (La. 2/22/07), 949 So. 2d 1247; *Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180; *Davis v. Whitaker*, 53,850 (La. App. 2 Cir. 4/28/21), 315 So. 3d 979.

We find that the trial court properly struck hearsay statements from Ms. Arnold's affidavit. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). "Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.C.P. art. 801(C). The statements made in Ms. Arnold's

affidavit were not made based on her personal knowledge, as she relayed information that was told to her by other individuals. As such, we cannot say that the trial court abused its discretion in striking those statements from Ms. Arnold's affidavit.

An insurance policy is a contract, and, as with all other contracts, it constitutes the law between the parties. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. *Bossier Plaza Associates v. National Union Fire Ins. Co. of Pittsburgh*, 35,741 (La. App. 2 Cir. 04/03/02), 813 So. 2d 1114, *citing Pareti v. Sentry Indemnity Co.*, 536 So. 2d 417 (La. 1988); *McKoin, supra.*

> Section I – Property Coverages under ANPAC's policy provides:
>
> Until actual repair or replacement is completed on the property, we will limit our payment to the actual cash value of the damaged property. For loss to roofs damaged by windstorm or hail, the initial payment will be 80 percent of the cost to repair or replace the damaged roof…. You will have 365 days, from the date of payment of the actual cash value or initial payment amount, to provide proof of the actual cost incurred to repair or replace the damaged property.

Similarly, ANPAC's "Loss of Use" coverage requires the residence's premises to be uninhabitable. Section I – Exclusions also states, in pertinent part:

> . . . .
>
> 6. We do not cover loss caused by:
>
> > a. wear and tear, marring, deterioration, erosion;
> >
> > . . . .
> >
> > f. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, slabs, walls, floors, roofs, or ceilings, regardless of whether such loss ensures from any loss which is covered under this policy.

8

ANPAC's policy further explains, in pertinent part:

Duties After Loss. In case of a loss to which this insurance may apply, the insured shall perform the following duties that apply. Your claim may be denied if your failure to perform any of these applicable duties prejudices our investigation of the claim. The following duties may apply:

. . . .

d. [The duty to] protect the property from further damage. This includes making reasonable and necessary repairs, and keeping an accurate record of those repair costs;

. . . .

e. [The duty to] make a list of damaged personal property showing in detail, the quantity, description, actual cash value, and amount of loss for each time Attach to this list all bills, receipts, and related documents that substantiate the ownership of the property and the figures in the inventory

In *McKoin*, *supra*, the plaintiff's home sustained damage from a fire, and the homeowner's insurance policy provided for fire damage and loss. After entering into an agreement with a contractor for the repairs, the insurance company revised its original estimates from the damaged property, increasing the estimate after additional damage was discovered. *Id*. at 438. After the work began repairing the home, the plaintiff became unhappy with the contractor and prevented the contractor from completing the repairs. *Id*. In her lawsuit, the plaintiff claimed that she was forced to pay a new contractor an additional amount of money for the completion of the work begun by the first contractor. *Id*. The insurance company filed a motion for summary judgment, and the trial court granted its motion. *Id*.

This Court in *McKoin* upheld the trial court's ruling because the record made clear that the defendant abided by the terms of its policy agreement by sending an experienced adjuster to appraise the damage and

calculate the amount of loss the plaintiff suffered. *Id*. at 439-40. Likewise, the plaintiff did not dispute the amount of loss that was calculated on her home, she accepted the insurance proceeds from the defendant, and she entered into an agreement with a contractor to perform the work that was needed. *Id*. Because the policy stated that the insurance company did not guarantee the quality of a contractor's workmanship, this Court concluded that no genuine issues of material fact existed and affirmed the lower court's grant of summary judgment in favor of the insurance company. *Id*.

Our review of the record shows that summary judgment was properly granted in this matter. Following Mr. Kennedy's evaluation and inspection of the property, ANPAC paid Ms. Arnold $23,255.95, the actual cash value of the repairs that needed to be made. Ms. Arnold then contracted with JNT to make the repairs to her home, and Mr. Kennedy thereafter performed another inspection of the home. This second inspection resulted in ANPAC paying $3,723.26 for the increased actual cash value estimate to repair the property. Despite Ms. Arnold terminating JNT before the repairs were completed, ANPAC paid Ms. Arnold an additional $6,535.39 which represented the full amount of the recoverable depreciation. ANPAC provided Ms. Arnold the replacement cost value, totaling $33,514.60, for her home despite ANPAC's policy with Ms. Arnold which states that ANPAC limits payment to the actual cash value of the damaged property until actual repair or replacement is completed on the property. In addition to ANPAC's $33,514.60 payment, ANPAC also issued payments for the cost of the tree removal from the home ($5,625.00) and for water mitigation services performed on the home ($2,486.17). According to the record, Ms. Arnold received $41,625.77 from ANPAC to cover the damages to her home.

The record reflects that ANPAC properly compensated Ms. Arnold for the damages to her home, and Ms. Arnold failed to show that she is owed more than ANPAC produced. In fact, ANPAC surpassed the standard required of them by providing the full replacement cost value to Ms. Arnold even though the repairs to her home are incomplete. As a result, we cannot say that any genuine issues of material fact exist as to ANPAC's obligations under the policy for costs of repairs for Ms. Arnold's roof.

Like the plaintiff in *McKoin*, Ms. Arnold was unsatisfied with the work performed on her home by the contractor, JNT. While Ms. Arnold may have been unhappy with the work performed to repair her roof, ANPAC satisfied its obligations under its agreement with Ms. Arnold by sending Mr. Kennedy to inspect the home, providing an estimate and a revised estimate for the repairs needed to be made on the home, and compensating Ms. Arnold for the damages she sustained to her roof.

As to Ms. Arnold's personal property, she alleges that ANPAC failed to reimburse her for the loss of her personal property. More specifically, she states that ANPAC failed to consider a number of items of her personal property when assessing the damage, including two mattresses, two rugs, dressers, blankets, pictures, sweaters, and photographs. In response, ANPAC urges that Ms. Arnold failed to comply with its policy provisions which instructed her to give ANPAC a list of the personal items damaged. Ms. Arnold, however, alleges that she provided ANPAC a flash drive with pictures of the personal items that were damaged.

According to the record, the insurance policy required Ms. Arnold to provide a list of the damaged personal property showing the quantity, description, actual cash value, and amount of loss for each item. Ms. Arnold

11

failed to comply with the policy by not producing a list of her personal property she allegedly lost as a result of the fallen tree. Because no list was provided, ANPAC was not required to reimburse Ms. Arnold for her alleged personal property damage.

Lastly, Ms. Arnold asserts that ANPAC failed to provide her compensation for the loss of use of her home. However, ANPAC's policy requires that to qualify for loss of use coverage, the home must be uninhabitable. Ms. Arnold continued to live in her home after the tree fell on her roof. As a result, Ms. Arnold is not entitled to loss of use of her home. Similarly, Ms. Arnold's other claims, including damage to a window in her daughter's bedroom, removing and replacing a bathroom vanity to repair water damage, and cracked bricks and foundation, are not covered under the insurance policy with ANPAC. Because the policy language is clear and unambiguous, we conclude that Ms. Arnold was not owed more than what she received from ANPAC.

Considering the record before us, we find no error in the trial court's determination that there were no genuine issues of material fact exist and that ANPAC is entitled to judgment as a matter of law.

### CONCLUSION

The judgment of the trial court granting the motion for summary judgment filed by the defendant, ANPAC Louisiana Insurance Company, dismissing the claims of plaintiff, Kelly Arnold, against defendant, ANPAC Louisiana Insurance Company, with prejudice is affirmed. Costs are assessed to the plaintiff, Kelly Arnold.

**AFFIRMED.**